Christopher Michael TATE, Appellant,

v.

The STATE of Texas.

No. 185–98

Court of Criminal Appeals of Texas,
En Banc.

Dec. 9, 1998.

James H. Kreimeyer, Belton, for appellant.

James T. Russell, Asst. Dist. Atty., Belton, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MANSFIELD, Judge, delivered the opinion of the Court in which BAIRD, OVERSTREET, PRICE, HOLLAND, & WOMACK, Judges, join.

The issue presented is whether Texas Rule of Criminal Evidence 404(b) [1] allows a defendant to present evidence of a victim's threat against him in order to show that the victim was the aggressor and the defendant acted in self-defense.

---

1. Unless otherwise indicated, all references to rules are to those in the Texas Rules of Criminal Evidence.

## The Relevant Facts

On September 11, 1996, a Bell County grand jury indicted appellant, Christopher Michael Tate, for murder under Texas Penal Code § 19.02(b)(2). At appellant's trial, the evidence established that, on August 18, 1996, appellant stabbed his girlfriend's father, Michael Neal Rackley, during an altercation at appellant's home. Rackley died as a result of those wounds. Appellant took the stand in his defense and testified that Rackley was the aggressor in the altercation and that he. (*i.e.,* appellant) acted in self-defense. See Tex. Penal Code §§ 9.31(a) & 9.32(a).

To help prove his claim of self-defense, appellant offered the testimony of his aunt, Brenda Turner Glen. She would have testified about a conversation that Rackley had with her a month or two before his death. The substance of the conversation was revealed during voir dire outside the presence of the jury:

> DEFENSE COUNSEL: Would it be fair to say you have been around Jessica [appellant's girlfriend], Michael Rackley, and Christopher Tate on many occasions?
>
> GLEN: Yes, sir.
>
> DEFENSE COUNSEL: Were you ever present when Michael Rackley threatened Christopher Tate to either kill him, beat him up, hurt him? Ever present when any of that was said or done?
>
> GLEN: When he made the threats, sir?
>
> DEFENSE COUNSEL: Yes.
>
> GLEN: Yes, sir.
>
> DEFENSE COUNSEL: And what did you hear?
>
> GLEN: Michael Rackley was at my home and they had to come to pick up an infant child that was in my care. I would not let them have the child because they did not have a car seat to carry the child safely from my home in and Michael was aggravated.
>
> He was talking to me and he said that he was getting tired of all the animosity that was in the family. He said he was getting tired of the family's interference. He was getting tired of Jessica calling wolf every time something happened and he was getting tired of having to deal with it.

> And he said it's going to cause me to have to kill the little son of a bitch some day. And that was his exact words to me.

> * * *

> PROSECUTOR: And when was this threat made?
>
> GLEN: The threat was made in the early part of the summer.
>
> PROSECUTOR: Was it made in the presence of this defendant?
>
> GLEN: In front of Christopher ?
>
> PROSECUTOR: Yes.
>
> GLEN: No, sir.

> * * *

> PROSECUTOR: Judge, we argue that this is inadmissible if it was never communicated to the defendant.
>
> DEFENSE COUNSEL: That shows it wasn't hearsay if it was in her personal knowledge, Your Honor.
>
> PROSECUTOR: Your Honor, a threat in order to get in front of the jury that he was acting under that threat has to be communicated to the object of that threat and this was never communicated to him by this witness' own words.
>
> THE COURT: The objection by the State is sustained. That comment may not be brought up in front of the jury.
>
> DEFENSE COUNSEL: Did I understand the court correctly in saying— Miss Glen, you never advised this gentleman of this threat?
>
> GLEN: No, sir, not— to the best of my knowledge, no. There was so many times there was conversations between all of us that—.
>
> DEFENSE COUNSEL: Same kind of threats or maybe not as seemingly serious?
>
> GLEN: A lot of boastful talking is the way I would describe it.
>
> DEFENSE COUNSEL: Okay.

> * * *

> DEFENSE COUNSEL: ... [U]nder the rules, I think, Mr. Kimball, if you will get,

I believe that's 4, the threat does not have to be communicated if it was made whether the man is deceased or not, it would show his intent prior to going over there. Now if he made a statement after that I don't think it would be admissible, so we object to the court's ruling.

PROSECUTOR: Your Honor, with regard to that comment that that was his intent going over there, her testimony was that, was made at the beginning of summer, early in the summer. So we're talking a month or two months before Mr. Rackley was murdered that this occurred and that's so remote in time as to be irrelevant at this point if he had, in fact, made that threat.

THE COURT: The court sustains that objection based on the witness' testimony. The fact that it is not relevant, that it was not communicated to the defendant, per the witness' testimony.

The jury subsequently convicted appellant of murder. The trial court assessed appellant's punishment at imprisonment for sixty years.

On appeal, appellant argued that the trial court had erred in excluding Glen's testimony regarding Rackley's threat. The Third Court of Appeals affirmed appellant's conviction, however, holding that Glen's testimony was properly excluded, although for a different reason than that given by the trial court. *Tate v. State,* 956 S.W.2d 845 (Tex.App.-Austin 1997). In its analysis, the Court of Appeals reviewed this state's case law on the admissibility of evidence of a homicide victim's character in cases involving claims of self-defense. *Id.* at 847. Under the *Dempsey* line of cases, which we will review *infra,* specific acts of a victim were admissible to establish a defendant's assertion that the victim was the aggressor. *Ibid.* The Court of Appeals reached the conclusion, however, that *Dempsey* and its progeny had been superseded by the Texas Rules of Criminal Evidence. *Id.* at 848. Under the rules, the Court of Appeals determined, character evidence of a victim in a homicide is admissible pursuant to Rule 404(a)(2),[2] but the specific act of a threat made by the victim is generally inadmissible because, under most circumstances,[3] character may only be established through reputation or opinion evidence. See Tex.R.Crim. Evid. 405(a). Since the uncommunicated threat was a specific act of the victim, evidence of it was, according to the Court of Appeals, inadmissible, and its exclusion by the trial court was not an abuse of discretion.

We granted appellant's petition for discretionary review to determine whether the Court of Appeals had misconstrued Rules 404 and 405. See Tex.R.App. Proc. 66.3. More specifically, the issue presented for our consideration is whether an uncommunicated threat is admissible under Rule 404(b) for purposes other than to show the victim's character and his conformity therewith. In other words, was Glen's testimony about Rackley's threat admissible to help demonstrate, not that Rackley acted in conformity with his character, but that he had the intent

---

2. Texas Rules of Criminal Evidence 404 & 405 read in relevant part:

 Rule 404
 a) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

 * * * * * *

 2) Character of Victim—In a criminal case and subject to Rule 412, evidence of a pertinent character trait of the victim of the crime offered by an accused....

 * * * * * *

 b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

 Rule 405
 a) Reputation or Opinion. In all cases in which evidence of character or trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion....

 b) In cases in which a person's character or character trait is an essential element of a charge, claim, or defense, proof may also be made of specific instances of the person's conduct.

3. See footnote 5, infra.

or motive to harm appellant on the night in question?

### Analysis

■ In general, evidence of a person's character may not be used to prove that she behaved in a particular way at a given time.[4] This rule exists "despite the fact that, frequently, evidence of a person's disposition will be of obvious probative value with respect to her behavior on an occasion in issue." Goode, *et al., Guide to the Texas Rules of Evidence: Civil and Criminal* § 405.2 (2nd ed.1993). This general ban on character evidence is not absolute, however. We specifically allow evidence concerning the pertinent character traits of the victim of a crime to be admitted. See Rule 404(a)(2). In this state, the general inclination favoring the admission of evidence concerning the character of a homicide victim has lengthy roots. In a line of pre-rules cases stretching back almost fifty years, we held that, in a homicide case, when there was some evidence of an act on the part of the deceased sufficient to raise an issue as to whether the defendant justifiably caused the death in self-defense, evidence of both the general reputation of the deceased for being of dangerous character, and prior specific acts of violent misconduct, was admissible. See *Gutierrez v. State*, 764 S.W.2d 796, 798 (Tex.Crim.App. 1989); *Lowe v. State*, 612 S.W.2d 579 (Tex. Crim.App.1981); *Beecham v. State*, 580 S.W.2d 588 (Tex.Crim.App.1979); *Dempsey v. State*, 159 Tex.Crim. 602, 266 S.W.2d 875 (Tex.Crim.App.1954). These specific acts could include both actions and statements of the deceased. See *Lowe v. State*, 612 S.W.2d at 579. This type of evidence was admissible to show either the reasonableness of a defendant's claim of apprehension of danger, or to show who was the aggressor at the time of the killing. *Gutierrez v. State*, 764 S.W.2d at 798; *Thompson v. State*, 659 S.W.2d 649, 653 (Tex.Crim.App.1983). If the evidence was offered to show that the deceased was the aggressor, the defendant need not have had knowledge of the acts or statements at the time of the homicide. *Lowe v. State*, 612 S.W.2d at 581; *Beecham v. State*, 580 S.W.2d at 590.

■ We agree with the Court of Appeals that if this case law were applied in the instant case, one would have to conclude that the trial court abused its discretion in excluding the evidence of the victim's uncommunicated threat. We also agree that Rules 404(a) and 405(a) specifically disallow particular acts of the victim to demonstrate character. The *Dempsey* line of cases stands for the proposition that reputation or specific act evidence is admissible to show a victim's character and demonstrate that either the defendant had a reasonable fear of the victim, or the victim was, in fact, the aggressor. However, this common law rule, as it developed, cannot be reconciled with the specific language of the relevant rules of evidence. While Rule 404(a)(2) allows the admission of evidence concerning a victim's character or pertinent character traits, Rule 405(a) limits the permissible method of proof to reputation or opinion testimony.[5] Proving who was the aggressor in a claim of self-defense is not dependent exclusively upon the character of

---

4. "Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance, or peacefulness." *McCormick on Evidence* § 195 (4th Ed.1992). See also IA *Wigmore on Evidence* §§ 54.1 at 1150, 63 at 1350 (Tiller's Rev.1983).

5. Only under certain circumstances can evidence of specific acts be used to demonstrate a person's character, and we agree with the State's argument that these facts do not present the appropriate circumstances. See Rule 405(b). Contrary to the language used in *Gonzales v. State*, 838 S.W.2d 848, 859 (Tex.App.-Hous. (1st Dist.) 1992), a victim's character is not an essential element of a claim of self-defense. "Character per se is almost never an element of a charge or defense in criminal cases." Goode, Wellborn, & Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal* § 405.2 (2nd ed.1993). See *Gilbert v. State*, 808 S.W.2d 467, 473 (Tex.Crim. App.1991); *Purtell v. State*, 761 S.W.2d 360, 370 (Tex.Crim.App.1988), *cert. denied*, 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989) (the victim's character is not an essential element of the offense of capital murder, nor is it an essential element of a defense to capital murder); *U.S. v. Keiser*, 57 F.3d 847 (9th Cir.1995). But compare *U.S. v. Thomas*, 134 F.3d 975, 980 (9th Cir.1998), in which it was held that predisposition is in fact an essential element of the defensive theory of entrapment and evidence of predisposition is admissible under Rule 405(b).

the victim, however. Therefore, our analysis of this issue cannot end upon reaching this conclusion concerning character evidence. It is necessary to look at the remainder of Rule 404.

■ If evidence is otherwise admissible, Rule 404(b) permits evidence of specific instances of crimes, wrongs, or acts to be introduced for purposes other than to show character. Such evidence is admissible if the evidence has relevance *apart from* its tendency to prove the character of a person in order to show that he acted in conformity therewith. *Gilbert v. State*, 808 S.W.2d 467, 471–72 (Tex.Crim.App.1991). Legal scholars have referred to Rule 404(b) as an inclusionary rule in which evidence of other wrongs, crimes, or acts is allowed so long as it is not offered to prove character or propensity to act or behave in a certain fashion. Goode, *et al., Guide to the Texas Rules of Evidence: Civil and Criminal* § 405.2 (2nd ed.1993). Nothing in the language of the rule would lead one to believe that it is a rule intended solely as a benefit for the State to be applied against the defendant, despite the fact "the overwhelming number of cases [do] involve introduction of [extrinsic crimes, wrongs, or acts] evidence by the prosecution." Fed. R.Evid. 404, Advisory Committee's Notes. Federal courts, in fact, have upheld a defendant's ability to use Rule 404(b) to admit evidence for purposes other than to show character. The 5th Circuit Court of Appeals has held that a defendant's "right to present a vigorous defense require[s] the admission of the proffered testimony [under Fed. R.Evid. 404(b)]." *U.S. v. McClure*, 546 F.2d 670, 673 (5th Cir.1977) (a systematic campaign of threats and intimidation against other persons is admissible Rule 404(b) to show lack of criminal intent on the part of defendant). A jury cannot properly convict or acquit absent the opportunity to hear proffered testimony bearing upon a theory of defense and weigh its credibility along with other evidence in the case. *Ibid.* Just as Rule 404(b) helped establish the defendant's defense in *U.S. v. McClure*, Rule 404(b) helps carry out the twin aims of the Dempsey rule—to show either the defendant's reasonable apprehension, or, as in this case, that the victim was the aggressor.

■ Appellant's purpose in offering Glen's testimony was not to prove Rackley's character, but rather to prove Rackley's intent or motive to cause him harm on the night in question. Thus, the evidence of this uncommunicated threat by Rackley, allegedly made only a month or two before Rackley's death, had relevance beyond its tendency to demonstrate Rackley's character. A reasonable jury could have believed this evidence shed light upon Rackley's state of mind when he arrived at appellant's house on the night in question, and, as long as it was otherwise admissible, appellant possessed the right to present it for the jury's consideration. The proffered evidence tended to make the existence of a consequential fact more probable. See Rule 401. In other words, the statement by Rackley that the animosity that existed within his family may have to "cause [him] to kill the little son of a bitch some day" was probative of his state of mind and possibly indicated a motive or demonstration of intent behind the confrontation that evening. In sum, Glen's testimony concerning Rackley's threat was probative of whether he was, in fact, the aggressor and admissible for "other purposes" besides demonstrating character and actions in conformity therewith. See Tex. R.Crim. Evid. 404(b). The trial court abused its discretion in excluding the evidence.

We reverse the judgment of the Court of Appeals and remand this case to that court so it can conduct a harm analysis consistent with Texas Rule of Appellate Procedure 44.2.

MEYERS, J., concurred in the result with an opinion.

KELLER, J., concurred in the result with an opinion.

McCORMICK, P.J., concurred in the result.

MEYERS, Judge, concurring.

Evidence of a victim's threats against the defendant, while not admissible to prove the character of the victim to show that he acted in conformity therewith,

may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.... Tex.R.Crim. Evid. 404(b). Thus, as appellant argues, evidence of the victim's threats may be admissible if they have relevance apart from a tendency to prove character conformity. The Court of Appeals erred in failing to consider the admissibility of the questioned evidence under this portion of Rule 404(b). To this extent I agree with the majority.

The majority goes on to examine whether the evidence has relevance beyond character conformity. *Majority op.* at 193. The Court of Appeals ought to have the opportunity to address this question in the first instance.[1]

I would vacate the judgment of the Court of Appeals and remand this case to that Court to consider whether there is an "other purpose" for which the evidence has relevance, apart from character conformity.[2]

KELLER, Judge, concurring.

Appellant offered testimony that some months before this murder the victim, Rackley, had said to appellant's aunt that the animosity between Rackley's daughter and appellant was going to cause Rackley to have to kill appellant some day. The trial court sustained the State's objection to the aunt's testimony and said he did so "because it would be hearsay." Defense counsel said that it was not hearsay because it was within the witness's personal knowledge, and he argued that the statement was admissible because it would show Rackley's intent in going to appellant's residence. The prosecutor's only response was that the episode was too remote from the date of the murder, and it was therefore irrelevant.

The Court of Appeals understood the offer "for intent" to be an offer to show that the victim was the aggressor. I do not think that is what appellant had in mind when he offered the evidence. It appears to me that since the offer for "intent" was made in response to the court's declaration that the evidence was hearsay, the offer was an attempt to get the evidence in as a hearsay exception. The hearsay exception that concerns intent is R. 803(3) of the Rules of Criminal Evidence, which provides for the admission of a statement of the declarant's then existing state of mind.

After appellant claimed that the evidence was admissible to show intent, the State responded that it was too remote. The prosecutor was either saying that the statement, even if it showed Rackley's intent at the time it was made, was too remote to show his intent at the time of the killing or he was saying that it was so remote that its prejudicial value outweighed its probative value. I think he was saying the former, i.e., Rackley's statement some two months before the killing that he would have to kill appellant was not relevant to what happened on the date of the murder.

Despite the fact that Rackley's statement was more boastful than threatening, and despite the fact that it was made two months before the killing, I think it was admissible as an exception to the hearsay rule. The jury could account for those matters in deciding how much weight to give the evidence. Unless it is pure hyperbole, a statement that expresses an intent to kill should be admissible under R.803(3).

I agree that the case should be remanded to the Court of Appeals to perform a harm analysis.

1. The Court of Appeals recognized the victim's character was relevant "to support the inference that he acted in conformity with his character; that is, was the aggressor as the defendant claims." 956 S.W.2d at 847. But, that court concluded, under Rule 404(b), despite its *relevance* in showing character conformity, such evidence was inadmissible for that purpose. *op.* at 848. They did not further question any other relevance of or purpose for such evidence. It is possible that court does not believe such evidence has other relevance.

2. The majority decides the question of "other purposes" in the first instance, and vacates and remands to the Court of Appeals with instructions to conduct a harm analysis. I concur in the majority's action to vacate and remand, but dissent to the content of the majority's instructions to the Court of Appeals.