TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00451-CR







Donald Edward Gibbs, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0990223, HONORABLE RON CHAPMAN, JUDGE PRESIDING







 A jury found appellant Donald Gibbs guilty of sexual assault of a child and
indecency with a child by contact and by exposure. See Tex. Penal Code Ann. §§ 21.11(a)(1),
(2) & 22.011(a)(2) (West Supp. 2000). (1) The jury assessed punishment, enhanced by prior
convictions, at life in prison. Appellant raises two issues complaining that the trial court erred
in (1) allowing the State's expert, Deborah Reyna, to testify generally about sexually abused
children and (2) refusing to allow appellant to introduce specific acts of misconduct by the
complainant. We will affirm the judgment of conviction. 




Background


 To help in the resolution of appellant's issues, we will first review the
complainant's testimony at trial. The complainant, who was seventeen at the time of trial, was
fifteen at the time appellant, her father, allegedly engaged in the charged offenses. At trial the
complainant testified extensively about her life with appellant. The complainant's immediate
family included her father and two brothers, one older than her and one younger. Her mother-figure was a woman her father dated named Willie who lived with the family until the complainant
was eleven or twelve. The complainant recalled that the family moved a lot when she was
younger. She recalled living in Florida, Michigan, and Texas. Her older brother testified that
the family lived in three cities in Florida and three cities in Michigan. Starting when she was
eight years old, at various times while she and appellant were alone at home and fully clothed,
appellant would touch her genital area with his hands, move his hands up and down for few
minutes and then stop. She did not tell anyone about these incidents because appellant threatened
to hit her if she did so.

 When she was eleven years old appellant walked into the bathroom while she was
taking a shower. Appellant reached into the shower, touched her genital area with his hands and
moved his hands up and down. She told appellant to stop touching her and he did. The next day
she told Willie about appellant's touching her in the shower. Willie responded that she did not
have time to hear about it. Soon after, Willie left the family and appellant was the only adult in
the household. 

 When she was fourteen years old she was in appellant's bedroom when he ordered
her to go over to the bed. Appellant undressed the complainant and placed his penis in her
vagina. The complainant told appellant that it hurt and asked him to stop but he only stopped when
he heard someone coming. Appellant again threatened to hit her if she told anyone about the
incident. The complainant said that several incidents like this occurred but she told no one about
them. 

 On January 21, 1998, the family was living in an apartment in Austin. The
complainant recalled that on this date appellant asked her to bring some coffee to him in his
bedroom. When she went into his bedroom he gave her a hug and started touching her genital
area and her breasts. He ordered her to lie down on the bed and he continued to touch her genital
area and her breasts. Appellant undressed and told the complainant to undress. She thought about
not obeying him but knew that if she did not he would hit her as that is what he had done in the
past when she did not obey him. Appellant then engaged in sexual intercourse with her. The
complainant told appellant continuously it hurt, she did not like it, and she wanted him to stop.
During this incident the complainant's older brother was in the living room but she did not call
out to him because appellant threatened to hit her if she did. Later that night, the complainant told
her older brother about the incident but he did nothing. 

 Later that night, the complainant's cousin was visiting at her house and the girls
went out. The complainant's curfew was 10:00 p.m. The girls returned before 10:00 but they
sneaked out of the house later that night. They returned home about 2:30 or 3:00 in the morning. 
When the complainant returned, appellant was very angry with her for leaving the house after her
curfew and hit her with a belt several times across her back and the back of her legs. The
complainant's older brother, her cousin and another friend witnessed appellant hitting her. The
complainant was crying. Eventually appellant stopped hitting her and ordered her to clean up the
kitchen which she did. She told her older brother that she was tired of the sexual abuse and the
beatings and she wanted to leave the house. Her cousin overheard this conversation and
encouraged the complainant to leave. She left with her cousin. The next morning the complainant
saw her brother and he encouraged her to go away because appellant was looking for her. She
went to another friend's house, called the police, reported her father's indecencies and told the
police that she did not want to return home. She eventually went to live with her cousins. She
explained that appellant tried to contact her by phone and that he wrote her and her brothers letters
trying to get her to retract her statements to the police. 

 Admitted as evidence were three letters written by appellant after his arrest while
he was in jail awaiting trial; one was addressed to the complainant and two others were addressed
to her brothers. In the letters he pleaded with the complainant's older brother to keep him
apprised of what was happening and to inform the complainant that she could withdraw her
statements to the police. In the letters appellant suggested that the complainant tell the police that
she was mad at him and was on drugs when she gave her statements. Additionally, the
complainant explained that when the family moved to Texas she and her brothers were supposed
to receive home schooling. There was never a teacher around and she did nothing during the day.




Expert Testimony


 Appellant's first issue involves the admissibility of Deborah Reyna's expert
testimony. See Tex. R. Evid. 702. (2) In reviewing the admission of evidence we must determine
whether the trial court abused its discretion. See Montgomery v. State, 810 S.W.2d 372, 391
(Tex. Crim. App. 1991) (opinion on rehearing). We may reverse a trial court's decision for an
abuse of discretion only when it appears the court applied an erroneous legal standard, or when
no reasonable view of the record could support the trial court's conclusion under the correct law
and the facts viewed in the light most favorable to its legal conclusion. Id. Even if this Court
would reach a different result, we may not intercede as long as the trial court's ruling was within
the "zone of reasonable disagreement." Id. 

 Reyna, a self-employed psychotherapist who specialized in helping crime victims,
was previously employed by the Austin Police Department Victim Services Division. While
Reyna did not interview the complainant, the State presented to her hypothetical situations that
closely resembled the complainant's testimony. Reyna then commented about the general effects
these situations would have on a child that had been sexually abused. 

 First, the State asked her to explain the effectiveness of a parent's attempt to control
an eight or nine-year-old child so as to prevent the child from making an outcry statement. She
explained that perpetrators commonly threaten their child victims with punishment, including
beatings, and that this usually deters any outcry, particularly if the child is eight or nine and has
been beaten before. She further explained that it is extremely difficult for a child to tell on a
parent. Second, Reyna explained the grooming process whereby a perpetrator will gradually
increase the severity of abuse with young children. The complainant's testimony showed that
appellant groomed her toward sexual intercourse. Reyna explained that she had not seen a case
of continuing sexual abuse of a child that did not include grooming. Third, the State asked Reyna
what the effect would be if a ten or eleven-year-old child told someone in the family about being
sexually abused and the person rebuffed her. Reyna explained that a child would probably shut
down and not tell anyone else about the abuse for quite some time. The State also asked Reyna
about the significance of a perpetrator frequently moving the family from town to town and state
to state. Reyna explained that this was common behavior that prevented the child from developing
any kind of relationships outside of the family. She also stated that home-schooling was an
example of isolating a child to prevent the child from making an outcry statement. Reyna also
discussed circumstances that often lead a child to outcry after a long period of silence. She
explained that a child will finally outcry after a long silence when there is a conflict about an
unrelated matter between the child and the perpetrator parent. This illustrated the outcry in this
case. Finally, the State asked Reyna about a perpetrator attempting to get the child to recant after
making an outcry statement. Reyna explained that this is common and is referred to as
suppression whereby the perpetrator tries to get the child to retract the outcry through notes and
promises and may enlist the help of siblings who often blame the child for the break-up of the
family. 


 Before Reyna testified, appellant objected that the testimony she was going to
present was not sufficiently relevant to qualify under the Daubert test. See Daubert v. Merrell
Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993). Appellant requested that the trial court
disallow Reyna's testimony because the substance of her testimony had not been qualified as
relevant. The trial court responded that, in reviewing the docket sheets from appellant's first trial,
he noticed that the first trial judge held several hearings regarding the admissibility of Reyna's
testimony and ruled that she be allowed to testify. The trial court adopted the rulings of the first
trial judge and allowed Reyna to testify.

 The trial court's task regarding rule 702 is to determine whether the proffered
expert testimony "is sufficiently reliable and relevant to help the jury in reaching accurate
results." See Daubert, 509 U.S. at 591; Jordan v. State, 928 S.W.2d 550, 555 (Tex. Crim. App.
1996) (quoting Kelly v. State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992)). Appellant does
not complain about the reliability aspect of Reyna's testimony; he contends only that Reyna's
general testimony about children that have been sexually abused and her responses to the State's
hypothetical questions were irrelevant and were not "sufficiently tied to the facts of the case that
[they would] aid the jury in resolving a factual dispute." See Jordan, 928 S.W.2d at 555 (quoting
Daubert, 509 U.S. at 591). 

 The Jordan court elaborated on the relevancy aspect of expert testimony holding
that,


relevancy is by nature a looser notion than reliability. Whether evidence "will
assist the trier of fact" and is sufficiently tied to the facts of the case is a simpler,
more straightforward matter to establish than whether the evidence is sufficiently
grounded in science to be reliable.



Jordan, 928 S.W.2d at 555. The expert must make an effort to "fit" testimony to the facts of the
case--to tie pertinent facts of the case to scientific principles that are the subject of its testimony. 
Id. Whether evidence will assist the trier of fact does not require the expert to address every issue
pertinent to its testimony that might be raised by the relevant facts. To adopt such a requirement
would go beyond the requirement that the expert testimony be helpful in resolving a factual issue.
Id. 

 Despite the fact that Reyna did not interview the complainant, her testimony was
sufficiently tied to the facts of the case. The State presented Reyna with hypothetical situations
that mirrored the complainant's testimony. Contrary to appellant's contention, Reyna testified
about topics and situations specifically related to the case. We overrule appellant's first issue. 


Specific Acts of Misconduct


 In his second point of error, appellant contends that the trial court erred by not
allowing one of his witnesses to testify on direct examination about a specific act of misconduct
by the complainant. 

 Appellant called Laura Cole, a former neighbor of appellant's, to testify about her
opinion of the complainant's general character for truthfulness. During direct examination Cole
testified it was her opinion that the complainant was not a truthful person. Appellant then,
seeking to attack the complainant's credibility, attempted to ask Cole about a specific act of
misconduct by the complainant that provided the basis for her opinion. (3) The State objected that
such evidence was not admissible under Texas Rule of Evidence 608(b); appellant contended that
it was admissible under Texas Rule of Evidence 405(a). 

 While Texas Rule of Evidence 404(a)(2) allows the admission of evidence
concerning a victim's character or pertinent character traits, rule 405(a) limits the permissible
method of proof to reputation or opinion testimony. See Tate v. State, 981 S.W.2d 189, 192
(Tex. Crim. App. 1998). Additionally, rule 405 provides that in all cases where reputation or
opinion testimony is admissible, "on cross-examination inquiry is allowable into relevant specific
instances of conduct." Tex. R. Evid. 405(a). The only time evidence of specific instances of
conduct reflecting character is allowable is to counter or test the basis of opinion or reputation
testimony given on direct examination. See Green v. State, 682 S.W.2d 271, 296 (Tex. Crim.
App. 1984). This is generally done by "have you heard" or "are you aware" questions. See id. 
In this case, appellant questioned Cole on direct examination and the State cross-examined her. 
The State, not appellant, could have asked Cole about specific instances of the complainant's
conduct with "have you heard" or "are you aware" questions. To allow appellant to ask Cole
about specific instances of misconduct by the complainant on direct examination would be in
essence to allow appellant to bolster Cole's opinion or reputation testimony with testimony about
specific acts. This is expressly restricted by rule of evidence 608. 

 Rule of evidence 608 explicitly addresses a witness's general character or
credibility for truthfulness. Dixon v. State, 2 S.W.3d 263, 271 (Tex. Crim. App. 1999) (opinion
on rehearing); Tex. R. Evid. 608. A witness's credibility for truthfulness may be impeached only
by opinion or reputation testimony and by proof of certain types of criminal convictions. Dixon,
2 S.W.3d at 271; Gonzalez v. State, 929 S.W.2d 546, 549 (Tex. App.--Austin 1996, pet. ref'd);
Tex. R. Evid. 608(a). Other than convictions for certain types of crimes, a witness's general
character for truthfulness may not be impeached by proof of specific acts of conduct. Dixon, 2
S.W.3d at 271; Gonzalez, 929 S.W.2d at 549; Tex. R. Evid. 608(b); see also 1 Steven Goode,
Olin Guy Wellborn III & M. Michael Sharlot, Guide to the Texas Rules of Evidence: Civil and
Criminal § 608.1 (Texas Practice 2d ed. 1993). We hold that the trial court did not abuse its
discretion because the specific act by the complainant that appellant sought to introduce into
evidence through Cole was not a conviction of a crime as provided in rule 609. We overrule point
of error two. 

 The judgment is affirmed.



 


 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: March 23, 2000

Do Not Publish
1.   This is appellant's second trial for these offenses. The first trial resulted in a mistrial due
to a hung jury. 
2.   If scientific, technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto in the form of an opinion
or otherwise. 
3.   The testimony appellant sought from Cole, elicited during a voir dire examination, was that
she believed the complainant had stolen a client's earrings when the complainant worked with
Cole cleaning houses, that when Cole confronted the complainant about the earrings she denied
seeing them, and that Cole recovered the earrings from the complainant after talking with
appellant. The complainant was never convicted of an offense related to this incident.



 truthful person. Appellant then,
seeking to attack the complainant's credibility, attempted to ask Cole about a specific act of
misconduct by the complainant that provided the basis for her opinion. (3) The State objected that
such evidence was not admissible under Texas Rule of Evidence 608(b); appellant contended that
it was admissible under Texas Rule of Evidence 405(a). 

 While Texas Rule of Evidence 404(a)(2) allows the admission of evidence
concerning a victim's character or pertinent character traits, rule 405(a) limits the permissible
method of proof to reputation or opinion testimony. See Tate v. State, 981 S.W.2d 189, 192
(Tex. Crim. App. 1998). Additionally, rule 405 provides that in all cases where reputation or
opinion testimony is admissible, "on cross-examination inquiry is allowable into relevant specific
instances of conduct." Tex. R. Evid. 405(a). The only time evidence of specific instances of
conduct reflecting character is allowable is to counter or test the basis of opinion or reputation
testimony given on direct examination. See Green v. State, 682 S.W.2d 271, 296 (Tex. Crim.
App. 1984). This is generally done by "have you heard" or "are you aware" questions. See id. 
In this case, appellant questioned Cole on direct examination and the State cross-examined her. 
The State, not appellant, could have asked Cole about specific instances of the complainant's
conduct with "have you heard" or "are you aware" questions. To allow appellant to ask Cole
about specific instances of misconduct by the complainant on direct examination would be in
essence to allow appellant to bolster Cole's opinion or reputation testimony with testimony about
specific acts. This is expressly restricted by rule of evidence 608. 

 Rule of evidence 608 explicitly addresses a witness's general character or
credibility for truthfulness. Dixon v. State, 2 S.W.3d 263, 271 (Tex. Crim. App. 1999) (opinion
on rehearing); Tex. R. Evid. 608. A witness's credibility for truthfulness may be impeached only
by opinion or reputation testimony and by proof of certain types of criminal convictions. Dixon,
2 S.W.3d at 271; Gonzalez v. State, 929 S.W.2d 546, 549 (Tex. App.--Austin 1996, pet. ref'd);
Tex. R. Evid. 608(a). Other than convictions for certain types of crimes, a witness's general
character for truthfulness may not be impeached by proof of specific acts of conduct. Dixon, 2
S.W.3d at 271; Gonzalez, 929 S.W.2d at 549; Tex. R. Evid. 608(b); see also 1 Steven Goode,
Olin Guy Wellborn III & M. Michael Sharlot, Guide to the Texas Rules of Evidence: Civil and
Criminal § 608.1 (Texas Practice 2d ed. 1993). We hold that the trial court did not abuse its
discretion because the specific act by the complainant that appellant sought to introduce into
evidence through Cole was not a conviction of a crime as provided in rule 609. We overrule point
of error two. 

 The judgment is affirmed.



 


 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: March 23, 2000

Do Not Publish
1.   This is appellant's second trial for t