# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00500-CR

**Cathy Elain Nolan, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 59413, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Cathy Elain Nolan guilty of murder and assessed her punishment at ninety-nine years' imprisonment. *See* Tex. Penal Code Ann. § 19.02 (West 2003). Appellant raises two issues on appeal: whether the trial court's jury charge improperly limited her right of self-defense, and whether the trial court erred by refusing to admit evidence of the deceased's previous convictions for assault. Finding no error, we affirm the judgment of conviction.

There was a party at Craig West's apartment in Killeen on the afternoon and evening of March 16, 2006. Among those attending the party were appellant and her sister, Brenda Nolan, and the deceased, Brooke Wilder. The party ended when a fight broke out between appellant and Wilder, and appellant shot Wilder four times. The principal issues at trial were whether appellant or Wilder had been the aggressor and whether appellant had acted in self-defense.

State's witness Kasii Harris also attended the party. Harris testified that around 9:00 p.m., Wilder and Brenda Nolan began to argue. Harris said that this confrontation was not physical; that Wilder and Brenda were only "antagonizing" each other. It was Harris's impression that appellant was trying to calm the situation. Eventually, the argument moved outside to the balcony in front of the apartment, where Wilder attempted to hit Brenda with an empty glass. Appellant and West intervened, and appellant and her sister soon left the party.

Harris testified that appellant returned to the party alone about thirty minutes later. Harris noticed that appellant parked her car around the corner instead of in front of the apartment, and that appellant had changed out of the clothes she had been wearing into a black sweatshirt and a black skull cap. Appellant walked up to Wilder, who was sitting on the balcony with Harris, kissed her on the cheek, and told her that she was there to help her. Then, according to Harris, appellant began to pace back-and-forth and in-and-out of the apartment while making "little antagonizing remarks." Finally, Wilder stood and told Harris that she "was going to handle this." With that, appellant and Wilder entered the apartment together and closed the door.

A short time later, the door of the apartment was opened and Harris could see appellant and Wilder standing in the living room, arguing. Harris testified that as she watched, appellant produced a gun and began to walk in a small circle. Wilder told appellant that "if [she] was going to shoot [her], [she] better kill [her]." Harris testified that Wilder had nothing in her hands. Harris said that the first shot was fired when West stepped between the two women in an apparent effort to break up the argument. Appellant and Wilder continued to exchange words, and the second shot was fired. Harris testified that this shot struck Wilder in the chest; Harris saw the blood "blossom over her heart." Harris heard two more shots as she ran to her car to call 911.

2

West's description of the original argument between Wilder and Brenda Nolan was similar to Harris's. With regard to the shooting, West testified that he was in his bedroom when he heard appellant and Wilder arguing in the living room. Harris said that when he stepped between them to defuse the situation, appellant reached into the pocket of her sweatshirt and took out a pistol. Appellant then fired a shot into the ceiling, and West ran back into the bedroom. West heard several more shots and called 911. Like Harris, West testified that the only weapon he saw was appellant's gun.

Police responding to the 911 calls found Wilder's body on the balcony in front of West's apartment. She had been shot four times, including twice in the chest. The medical examiner testified that either of the two chest wounds would have been fatal. Appellant fled from the apartment after the shooting. The police sought her without success for two weeks before she turned herself in. No weapons of any kind were found at West's apartment, and the gun used to kill Wilder was never recovered.

In her own testimony, appellant gave an account of the evening that was considerably different from Harris's and West's. According to appellant, the original argument had not been between Wilder and Brenda, but between West and Brenda. In any event, appellant said that she broke up the argument and took Brenda home. Appellant then drove to her own residence, showered, and prepared to go to bed. It was then that she realized that she had left her purse at West's apartment. Appellant testified that she decided to drive back to the apartment to get her purse, so she put on the black sweatshirt because it was handy and the black skull cap because her hair was wet. Appellant testified that her only purpose in returning to West's apartment was to

3

retrieve her purse, that she was not carrying the pistol in her pocket, and that she did not park her car around the corner from the apartment.

Appellant testified that she saw Wilder standing outside the apartment when she arrived, but nothing was said between them. Appellant found her purse in the living room and apologized to West for her sister's earlier behavior. At this point, Wilder entered the apartment, cursing and complaining that appellant and Brenda thought that they "run stuff here." Appellant said that she told Wilder that her dispute was with Brenda. When West intervened, appellant noticed that Wilder was holding a knife. Wilder told appellant that she was going to kill her. Wilder then pushed West to the floor and began to grab and hit appellant. Appellant testified that as she fended off Wilder's attack, she reached into her purse and pulled out her pistol.[1] She fired a shot into the ceiling and told Wilder to step away from her. Instead, Wilder grabbed the pistol in both hands and the two women began to struggle for control of it. The other shots were fired during this struggle. Appellant testified that she did not intend to provoke or shoot Wilder, that she brandished the pistol in self-defense, and that she did not fire the fatal shots intentionally.

The trial court charged the jury on the use of deadly force in self-defense. *See* Tex. Penal Code Ann. §§ 9.31, .32 (West Supp. 2008). Over appellant's objection, the court instructed the jury that the use of force against another is not justified "if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was carrying a weapon" in violation of penal code section 46.02. *Id*. § 9.31(b)(5)(A); *see id*. § 46.02. Appellant contends that this limiting instruction should not have

---

[1] Appellant testified that she ordinarily kept the pistol in the trunk of her car. She said that Brenda had put the pistol in appellant's purse earlier that day, before they went to the party.

4

been given because there was no evidence that she returned to the apartment to seek an explanation or discussion of her differences with Wilder.[2]

Although appellant testified that she returned to West's apartment to retrieve her purse and not to confront Wilder, the jury was not bound to accept this testimony as true. Instead, the jury could reasonably infer from the State's evidence that appellant armed herself, returned to West's apartment, and sought out Wilder either to discuss or demand an explanation for their earlier disagreement. Because the evidence raised the issue, the trial court did not err by instructing the jury pursuant to section 9.31(b)(5)(A).[3] Issue one is overruled.

In her second issue, appellant contends that she should have been allowed to offer evidence of Wilder's two misdemeanor assault convictions, one in July 2001 and the other on March 15, 2006, the day before the shooting. Appellant argues that Wilder's previous assaultive behavior was admissible to show that Wilder was the first aggressor and thus to support appellant's self-defense claim. The State responds, as it did below, that the previous convictions were inadmissible character evidence.

A defendant in a homicide prosecution who raises the issue of self-defense may introduce evidence of the deceased's violent character in order to prove that the deceased acted in conformity with that character, but this evidence must take the form of opinion or reputation testimony. Tex. R. Evid. 404(a)(2), 405(a); *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App.

---

[2] Appellant does not contend that she was lawfully carrying the pistol.

[3] The court also instructed the jury on verbal provocation and provocation by the actor. *See* Tex. Penal Code Ann. § 9.31(b)(1), (4) (West Supp. 2008). Appellant does not complain of these limiting instructions.

2002); *Tate v. State*, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998). Specific acts of violent misconduct by the deceased may be offered by the defendant to show the reasonableness of the defendant's fear of danger or to show that the deceased was the first aggressor, but only to the extent that the acts are relevant apart from their tendency to show the deceased's violent character. Tex. R. Evid. 404(b); *Torres*, 71 S.W.3d at 760; *Tate*, 981 S.W.2d at 193.[4] In *Tate*, for example, evidence that the deceased had threatened to kill the defendant was relevant to prove the deceased's intent or motive to cause the defendant harm on the night in question, and thus had relevance to the self-defense issue beyond its tendency to demonstrate the deceased's character. 981 S.W.2d at 193. The deceased's previous threats or acts of violence need not have been directed against the defendant. In *Torres*, evidence that the deceased had previously entered the apartment by climbing through a window and threatened the occupants with violence was admissible to explain the deceased's similar entry into the apartment on the night he was shot by the defendant, who had not been present on the previous occasion. 71 S.W.3d at 762.

In the case now before us, appellant sought to introduce copies of the complaints and judgments of conviction documenting Wilder's two assault convictions. Beyond the dates of the assaults and the names of the victims as reflected in the complaints, appellant did not seek to prove the facts underlying these convictions. The victim named in the 2001 complaint was Robert Murphy. Harris testified that she heard the name Murphy mentioned during the argument

_____

[4] Appellant refers us to the opinion in *Hardman v. State*, No. 01-99-00289-CR, 2000 Tex. App. LEXIS 3773 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (not designated for publication). To the extent that *Hardman* suggests that prior convictions or specific acts of misconduct are admissible to prove the violent character of the deceased in a self-defense case, it is contrary to the cited opinions of the court of criminal appeals.

between Wilder and Brenda Nolan, and appellant testified that she assumed that Wilder "was still mad at my sister over this Murphy guy." Assuming that the Robert Murphy assaulted by Wilder was the Murphy mentioned in this testimony, the mere fact that Wilder had assaulted him in 2001 does not suggest any intent or motive for Wilder to attack appellant five years later. No connection was shown between Wilder's more recent assault conviction and the events of March 16, 2006. Apart from their tendency to show her violent character, neither of Wilder's assault convictions was relevant to demonstrate either the reasonableness of the appellant's fear of danger or that Wilder was the first aggressor. The trial court did not abuse its discretion by excluding the proffered evidence. Issue two is overruled.

The judgment of conviction is affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: October 31, 2008

Do Not Publish

7