# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00213-CR

**Wesley Lee Hill, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT
### NO. 2008-015, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Wesley Lee Hill of murder, *see* Tex. Penal Code Ann. § 19.02 (West 2003), sentenced him to life in prison, and assessed a $10,000 fine. Hill argues that the trial court erred by excluding certain character evidence and by overruling an objection to the State's closing argument. Hill also argues that he was denied effective assistance of counsel. We affirm the judgment of conviction.

Hill, Johnny Riles, and Juan Mendoza were neighbors. Mendoza lived across the street from Riles, and Hill lived next door to Mendoza. Riles, who was 77-years old and in poor health at the time of the murder, was Hill's uncle.

On December 2, 2007, Hill went to Riles's house to collect $40 allegedly owed him by Riles. The evidence indicates that Riles was in bed or sleeping at the time, as the inside of his residence was completely dark, his porch light was on, and his glasses were found on the kitchen

table.  Neighbors testified that it was common knowledge in the neighborhood that Riles was in the habit of going to bed at an early hour and turning his porch light on when he had retired for the evening.  Witnesses also testified that Riles always wore his glasses, except when sleeping.

When Hill entered Riles's house that evening, Riles's neighbor, Mendoza, was at his home with his brother, Gerald Mendoza.  The two brothers had observed Hill entering Riles's house without knocking.  They walked outside and heard a loud thud.  Concerned, the brothers walked across the street to investigate.  When they arrived, they observed Hill talking on the phone at the door to Riles's house.  Hill told them that Riles was hurt and that he was going to blame the injury on Gerald.  Gerald walked into the house and found Riles on the floor in a bedroom, barely breathing.  Gerald also observed blood and a broken shotgun.

Gerald's girlfriend called 911.  When officers arrived, Hill told them that Riles was almost dead and that he had beaten Riles with a shotgun.  According to Hill, Riles had tried to shoot and stab him because Hill had come to collect $40 owed to him.  Officers found Riles on the floor of a bedroom.  He was lying on top of a broken shotgun.  Riles was bleeding, and his blood stains were found low on the wall, all within thirty inches of the floor, indicating that he had sustained injuries while lying down.  There was blood and sheet rock material on the shotgun barrel.  Officers also found evidence of a gunshot blast in the hallway, observing gunshot residue in the carpet, a spent shotgun shell on the floor, and three pellets in the sub floor.

Riles was to be taken by helicopter from Lockhart to Austin, but he died in transit.  The autopsy showed that Riles died from multiple blunt force injuries.  The examiner noted twenty-

2

three rib fractures, which had caused Riles's lungs to collapse. The examiner also discovered that Riles's skull had been fractured.

Hill was arrested. At the time of his arrest, more than $1,200 was found on his person, and there was evidence that, of that $1,200, a sum of $991 had been stolen from Riles at the time of the murder. On the way to the police station, Hill talked repeatedly about the beating, telling officers, for example, "I kicked his face off with [my shoes]," "[t]hen I bust him in his ass again with the gun," and "I made sure his bitch ass was dead before I threw the gun and knife on his ass."

Hill was indicted for murder. *See* Tex. Penal Code Ann. § 19.02. A jury convicted him as charged, sentenced him to life in prison, and assessed a $10,000 fine. Hill argues that the trial court erred by excluding certain character evidence and by overruling an objection to the State's closing argument. Hill also argues that he was denied effective assistance of counsel.

In his first point of error, Hill argues that character evidence pertaining to Riles should have been admitted. The evidence was admissible, Hill contends, to show that Riles was the first aggressor and to rebut the evidence that Riles was frail, old, weak, and defenseless in his encounter with Hill.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). Unless the trial court's decision was outside the zone of reasonable disagreement, we uphold the ruling. *Id.*; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

When a defendant in a homicide prosecution raises the issue of self-defense, he may introduce evidence of the deceased's violent character. Tex. R. Evid. 404(a)(2); *Tate v. State*,

3

981 S.W.2d 189, 192-93 (Tex. Crim. App. 1998). To demonstrate the reasonableness of the defendant's fear of danger or to demonstrate that the deceased was the first aggressor, specific acts of violence may be introduced. *Torres v. State*, 117 S.W.3d 891, 894 (Tex. Crim. App. 2002). Evidence of the deceased's prior violent acts is admissible, however, only to the extent that the evidence is relevant apart from showing character conformity. *Id.* Specific violent acts are relevant apart from showing character conformity when the acts are used to prove the deceased was the first aggressor by demonstrating the deceased's intent, motive, or state of mind. *Id.* at 894-95. However, there must be some evidence of aggression by the deceased during the events that gave rise to the criminal charges in the case before the defendant may introduce evidence of a prior specific violent act that tends to explain the deceased's later conduct. *Id.* at 895.

Here, we find no evidence of aggression by Riles during the events preceding his murder. The evidence shows that Hill entered Riles's home after Hill had retired for the evening. Hill was uninvited and did not knock. The house was dark, and Riles's glasses, which he wore at all times except when sleeping, were found on the kitchen table. Hill's stated reason for entering Riles's house was to collect $40 owed by Riles. The evidence indicates that Hill took $991 in cash from Riles.

When police arrived, they found Riles on the bedroom floor, along with a broken shotgun. The injury to his head was consistent with his having been hit on the head with the shotgun barrel. All the bloodstains were low on the wall, indicating that Hill had inflicted the injuries while Riles was lying on the ground, defenseless. At the time of this death, Hill was 77 years old and in poor health.

Thus, the evidence shows that Hill entered the home of Riles, his elderly uncle, uninvited, and proceeded to rob and beat him. Whether Riles grabbed his shotgun before the beating began, as Hill asserts, or after, there is no evidence to show that Riles was the first aggressor. The district court acted within its discretion in excluding character evidence as to Riles. Accordingly, we overrule Hill's first point of error. *See Shuffield*, 189 S.W.3d at 793.

In his second point of error, Hill argues that the State's argument to the jury that Hill had a duty to retreat when confronted by Riles was a misstatement of the law. According to Hill, the State's argument was contrary to the law of retreat and prevented him from effectively asserting his self-defense argument.

Hill complains about the following argument:

| | |
|---|---|
| State's counsel: | Ladies and gentlemen, if you look at the Charge, at the end of each self-defense: |
| | "A person who has a right to be present at the location where the forced [sic] is used, who has not provoked the person against whom the force is used, and who is not engaged in criminal activity at the time the force is used is not required to retreat before using force." |
| | All right. Well, you look at that. If Mr. Hill had seen Johnny Riles with the shotgun, I think it's safe to assume that at that point Mr. Hill no longer had a right to be present at the location where the force was used. So, therefore, Mr. Hill had a duty to retreat. |
| Defense counsel: | Judge, I'll object. That's not what the law says. |
| Court: | Overruled. |
| State's counsel: | He had a duty to retreat. Somebody pulls a shotgun—You're in somebody else's house, somebody pulls a shotgun on you, |

5

> good idea, hey, you no longer have the right to be there. Better get off that property. He had a duty to retreat.

Defense counsel:     Same objection. May I have a running objection?

Court:               Overruled.

Permissible jury argument includes summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and plea for law enforcement. *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988). To warrant reversal, argument must be manifestly improper, violate a statute, or inject new, harmful facts into the case. *Everett v. State*, 707 S.W.2d 638, 640 (Tex. Crim. App. 1986).

Prior to September 1, 2007, section 9.32 of the penal code provided the use of deadly force was justified only "if a reasonable person in the actor's situation would not have retreated." *See* Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1, 1995 Tex. Gen. Laws 2141, 2141-42 (amended 2007) (current version at Tex. Penal Code Ann. § 9.32 (West Supp. 2009)). Effective September 1, 2007, the legislature deleted the requirement that a reasonable person in the actor's situation would not have retreated. However, the legislature also added to both sections 9.31 and 9.32 of the penal code the provision that "[a] person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as required by this section." Tex. Penal Code Ann. §§ 9.31(e), 9.32(c) (West Supp. 2009).

6

The State argued that Hill had no right to be present at Riles's house and that he had provoked Riles and engaged in criminal activity. Therefore, Hill was required to retreat before using deadly force. While the State's argument did not exactly track the language of the statute, the meaning the State sought to convey was clear and was consistent with the circumstances in which it is statutorily permissible to defend oneself with deadly force. None of the deadly force justifications apply here, and, assuming that Hill was not justified in using deadly force, he was required to retreat. *See id.* §§ 9.31, 9.32. Considering the substance of the self-defense statute, we do not agree that the State's argument that Hill had a duty to retreat was manifestly improper, *see Everett*, 707 S.W.2d at 640, and we overrule Hill's second point of error.

In his third point of error, Hill argues that he was denied effective assistance of counsel. Specifically, Hill challenges his attorney's failure to object to certain testimony during the punishment phase and his failure to request a punishment mitigation charge or object to the absence of such charge.

We evaluate claims of ineffective assistance of counsel against the standard set forth in *Strickland v. Washington*. *See* 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 774 (Tex. Crim. App. 1999). In deciding a claim of ineffective assistance of counsel at a noncapital sentencing proceeding, we must determine whether an attorney's performance was deficient and, if so, whether that deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Thompson*, 9 S.W.3d at 812. Deficient performance is prejudicial when, but for the attorney's unprofessional conduct, there is

7

a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 814. We review the effectiveness of counsel in light of the totality of the representation and the circumstances of each case. *Id.* at 813.

In most cases, an undeveloped record on direct appeal is insufficient to satisfy the dual prongs of *Strickland* because the reasonableness of counsel's decisions often involves facts not appearing in the appellate record. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Without evidence of the strategy and methods involved concerning counsel's actions at trial, an appellate court should presume a sound trial strategy. *See Thompson*, 9 S.W.3d at 814. Where an allegation of ineffective assistance of counsel is not raised in a motion for new trial, trial counsel has no opportunity to explain his conduct, and absent such opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

The State elicited testimony from four family members—Hill's sister (Riles's niece) and three of Hill's cousins (Riles's sons)—as to the punishment they believed the jury should assess. All responded that Hill should be given a life sentence. Hill contends that this testimony was improper and that defense counsel's performance was deficient because he failed to object.

8

A family member's statement of opinion as to the punishment deserved by the defendant is outside the scope of what is admissible as victim-impact evidence in the punishment phase of trial. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). Even if the evidence would have been inadmissible upon proper objection by trial counsel, however, there is substantial evidence to support the jury's assessment of a life sentence, and we cannot conclude that, but for trial counsel's failure to object, there is a reasonable probability that the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812.

The jury was to assess punishment in the range of five to ninety-nine years. All four witnesses who offered opinions as to how long Hill should be sentenced were related to both Hill and to Riles. They each testified that, because of Hill's propensity for violence, they feared for their safety and the safety of their families. Each testified that they believed that Hill's release would result in a repeat offense. Riles's three sons all testified as to the devastating impact Riles's murder had on their families and that the murder had created an atmosphere of fear in the family, especially among their children (Riles's grandchildren). Hill's sister testified that she was afraid of Hill, describing an incident in 2007 when Hill attacked her, hitting her and threatening her and her two sisters with a knife. She told the jury that Hill is mentally ill and that, when Hill does not take his medication, he becomes "very violent."

The testimony of each of these four witnesses shows that each recognized Hill's violent tendencies and were afraid that—if Hill were released—he would be a continuing danger to them and to their families. Even without direct statements that these witnesses wanted to see Hill locked up for life, the jury could have reasonably made this inference. In addition, the witness's

testimony that Hill was mentally ill, violent, and a continuing danger provided substantial support for the jury to sentence Hill to life in prison. Given this testimony, we find no reasonable probability that trial counsel's failure to object to the witness's specific recommendations of punishment would have had any effect on the jury's verdict. *See Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812.

Hill also argues that he was denied effective assistance of counsel when defense counsel failed to request a punishment mitigation charge. Specifically, Hill argues that he was entitled to a sudden passion instruction which, if found by the jury to have been proven by a preponderance of the evidence, would have reduced the offense from a first degree felony to a second degree felony. *See* Tex. Penal Code Ann. § 19.02(c), (d); *McKinnley v. State*, 179 S.W.3d 565, 570 (Tex. Crim. App. 2005). However, as Hill concedes, a sudden passion instruction is proper only when the sudden passion was directly caused by and arose out of provocation by the deceased at the time of the offense. *McKinnley*, 179 S.W.3d at 570. As discussed above, the evidence shows that Hill entered the home of Riles, his elderly uncle, uninvited, and proceeded to rob and beat him. Even if the jury believed that Riles pointed a shotgun at Hill in response to Hill's intrusion, Hill, as intruder, cannot claim that he was provoked by Riles. In such circumstances, Hill would not have been entitled to a sudden passion instruction, even if one had been requested by trial counsel, and trial counsel's failure to object to the absence of such instruction was proper. Accordingly, we overrule Hill's third point of error.

Having overruled each of Hill's points of error, we affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   June 25, 2010

Do Not Publish