**AFFIRM; and Opinion Filed April 7, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00347-CR

### ABELARDO VASQUEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court No. 10**
**Dallas County, Texas**
**Trial Court Cause No. MA-1031684**

## MEMORANDUM OPINION

Before Justices FitzGerald, Fillmore, and Evans
Opinion by Justice Fillmore

A jury convicted Abelardo Vasquez of misdemeanor assault involving family violence, and the trial court assessed punishment of 365 days' confinement, probated for two years, and a fine of $2000. In three points of error, Vasquez contends the trial court erred by denying his motion for continuance and motion for mistrial and by refusing to admit testimony about a pertinent character trait of the complainant. We affirm the trial court's judgment. We issue this memorandum opinion because the law to be applied in this case is well-settled. *See* TEX. R. APP. P. 47.1., 47.4.

## Background[1]

In 2010, Vasquez was separated from his wife, Brenda Mestas. Mestas and Vasquez's two children were living with Mestas. On October 31, 2010, Vasquez and his sister, Olga Vasquez (Olga), went to Mestas's house to see the children. Mestas told Vasquez that she planned to take the children to church, and he could not take the children with him.

Vasquez and Mestas argued about Vasquez taking the children. According to Mestas, Vasquez pushed her head into the wall, causing a bruise on her forehead and a dent in the wall. Over Mestas's objection, Vasquez and Olga left with the youngest child. Mestas called the police and reported the assault.

Vasquez and Olga bought the child a pair of shoes and returned to Mestas's house. By that time, police officers had arrived at Mestas's house to investigate the reported assault. After speaking with Vasquez and Olga, the police officers allowed them to leave. Vasquez was subsequently charged with assaulting Mestas. At trial, both Vasquez and Olga testified that Vasquez did not assault Mestas. Vasquez testified he did not know "how [Mestas] did the bump to herself," and Olga testified that she believed Mestas had injured herself.

## Motion for Continuance

In his first point of error, Vasquez contends the trial court erred by denying his motion for continuance. On the first day of trial, the prosecutor produced to Vasquez a social study prepared during a dispute over the custody of the children in Mestas and Vasquez's divorce proceedings. Vasquez filed a written, unverified motion for continuance to allow him to "read, investigate and call the writer of the report to testify." Vasquez orally argued to the trial court that the social study contained potentially exculpatory information. Vasquez specifically

---

[1] Because Vasquez has not challenged the sufficiency of the evidence to support the conviction, we recite only those facts necessary to address his complaints on appeal.

directed the trial court to page twelve of the report where, Vasquez represented, the author stated that, after interviewing Mestas and Vasquez, there was insufficient evidence to determine whether the assault happened.[2] The trial court denied the motion for continuance.

Under articles 29.03 and 29.08 of the code of criminal procedure, a party seeking a continuance must do so in a sworn, written document that sets forth sufficient cause. TEX. CODE CRIM. PROC. ANN. arts. 29.03 ("A criminal action may be continued on the written motion of the State or the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion."); 29.08 ("All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance.") (West 2006). A defendant must comply with these statutory requirements to preserve for appellate review the trial court's denial of a motion for continuance. *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2010).

Vasquez filed a written, unsworn motion for continuance. Because Vasquez's motion failed to meet the statutory requirements, he forfeited his right to complain about the trial court's denial of the motion. *See id.*; *Dewberry v. State*, 4 S.W.3d 735, 755–56 (Tex. Crim. App. 1999) (defendant's oral motion for continuance based on exculpatory evidence that was not disclosed by the State did not preserve issue for appeal); *Jimenez v. State*, 307 S.W.3d 325, 331 (Tex. App.—San Antonio 2009, pet. ref'd) (written, unsworn motion for continuance based on State's failure to disclose material evidence preserved nothing for appellate review). Where an issue has not been properly preserved for appeal, the court of appeals may "not address the merits of that issue." *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012).

---

[2] Page twelve of the social study contains a summary of information about the October 31, 2010 incident that the family court counselor who authored the social study obtained from the Department of Family and Protective Services. The summary reflects the Department concluded there was insufficient evidence that Vasquez physically abused his youngest child during the incident. It does not contain a conclusion by either the Department or the family court counselor as to whether the alleged assault of Mestas occurred. Later in the social study, however, the family court counselor concluded the indentation on the wall along with the bruise on Mestas's forehead "suggests that indeed her head was pushed against a wall."

Even if we were to assume that error had been preserved, Vasquez has not established the trial court abused its discretion by denying the motion for continuance. *See Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007) (appellate court reviews trial court's denial of a motion for continuance for abuse of discretion). To show reversible error due to the denial of a motion for continuance, a defendant must demonstrate both that the trial court erred by denying the motion and that the lack of a continuance harmed him. *Gonzales v. State*, 304 S.W.3d 838, 842–43 (Tex. Crim. App. 2010). Prejudice is demonstrated from the lack of continuance "only if the record shows with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had." *Id.* at 842 (quoting George E. Dix & Robert O. Dawson, 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 28.56 (2d ed. 2001), at 532–33). This showing is ordinarily made at a hearing on a motion for new trial where, almost always, the defendant will "be able to produce evidence as to what additional information, evidence or witnesses the defense would have had available if the motion for delay had been granted." *Id.* at 842–43.[3] In addition to this showing of harm, the defendant must also establish the trial court's ruling on the motion was error. *Id.* at 843. "This most likely requires a showing that the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial." *Id.* (quoting 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 28.56 at 533).

Citing to *Brady v. Maryland*, 373 U.S. 83 (1963), Vasquez argues he was prejudiced by the trial court's denial of the motion for continuance because the social study contained exculpatory material that the State failed to timely produce. Under *Brady*, the State has an affirmative duty to disclose evidence favorable and material to a defendant's guilt or punishment

---

[3] Vasquez filed a motion for new trial. At the hearing on the motion, the only evidence offered by Vasquez was a copy of the social study.

under the due process clause of the Fourteenth Amendment of the United States Constitution. *Id.* at 86–87. To establish a *Brady* violation, the defendant must show (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith, (2) the withheld evidence is favorable to him, and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Strickler v. Greene*, 527 U.S. 263, 280–82 (1999); *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011) (quoting *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002)). However, *Brady* does not apply when the defendant is already aware of the exculpatory information. *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Havard v. State*, 800 S.W.2d 195, 204–05 (Tex. Crim. App. 1989) (op. on reh'g); *see also Pena*, 353 S.W.3d at 810. "[T]here is no due process violation under circumstances in which the defendant himself already knew about the exculpatory facts." *Ex parte Chavez*, 213 S.W.3d 320, 325 (Tex. Crim. App. 2006).

Vasquez participated in the preparation of the social study by providing answers to questions from the family court counselor, allowing the counselor to observe his interactions with the children, and allowing the counselor to visit his home. The social study states it was presented on May 31, 2012 by the family court counselor to the court in which the divorce proceedings were pending. This was over seven months before the trial in this case commenced on January 16, 2013. Vasquez testified there had been a trial in the divorce proceedings, and the divorce would become final on February 14, 2013. Vasquez was clearly aware of the existence of the social study well before the trial of this case.

Further, the information contained in the social study was known to Vasquez. Vasquez contends the social study contained information about Mestas's violent nature, injuries to Vasquez caused by Mestas, Mestas and Vasquez's children discrediting the claims of abuse, and Mestas giving inconsistent statements about her access to healthcare. He also contends it

supports his testimony that he took Olga to Mestas's house as a witness because he was afraid Mestas would manipulate events. However, this information was included in the social study based on interviews with Vasquez, Mestas, and their oldest child or based on information obtained from the Texas Department of Family and Protective Services following its investigation of the October 31, 2010 incident. Further, Vasquez and Olga testified about much of the information included in the social study.

Because Vasquez has failed to establish the social study contained exculpatory information that he did not know, he failed to establish the State violated *Brady* by producing the social study on the day of trial. Accordingly, Vasquez has failed to establish he was prejudiced by the trial court's denial of the motion for continuance. We resolve Vasquez's first point of error against him.

### Motion for Mistrial

In his second point of error, Vasquez contends the trial court erred by denying his motion for mistrial after Mestas violated a motion in limine by testifying three times about prejudicial extraneous information.

Prior to trial, the prosecutor made an oral motion in limine requesting that Vasquez not question Mestas about her arrest in 2007 without obtaining a ruling from the trial court. The trial court ruled that "[i]f either side wants to get into any facts that didn't occur on the date of the offense" or that were not "background," the attorney needed to "ask to approach the bench." The prosecutor also requested that neither the State nor Vasquez refer to the immigration status of either Mestas or Vasquez without first approaching the bench and obtaining a ruling from the trial court. The trial court granted the motion.

Mestas testified with the assistance of an interpreter. As relevant to this issue, Mestas was asked whether there were any visitation orders in place on October 31, 2010. The record

reflects that Mestas answered, "no," and then continued to answer in Spanish. Before the remainder of Mestas's answer was translated, Vasquez's counsel objected that it was nonresponsive. The trial court overruled the objection "at this point." The interpreter continued Mestas's answer that, "in July of that same year after he had been detained, we had –." Vasquez's counsel made a general objection and asked to approach the bench. The bench conference was not recorded. However, the jury was excused, and the trial court instructed Mestas that she was not to provide any information about her or Vasquez's immigration status or about any other incidents of violence between her and Vasquez. Mestas indicated she understood. Prior to the jury returning, Vasquez's counsel stated that he was not going to make a motion to disregard.

Later in her testimony, Mestas was asked when her child was returned to her by Vasquez on October 31, 2010. Mestas responded that she went to her neighbor's house and was afraid, "because of threats she had received," that something could happen to her. The trial court sustained Vasquez's objection to the responsiveness of the answer, and at Vasquez's request, instructed the jury to disregard Mestas's statement.

Finally, Mestas was questioned about the divorce proceedings and whether she was willing for Vasquez to have custody of the children. Mestas responded she would not give her children to "an irresponsible man who abandoned us and not only that, but he had done drugs and he has priors." Vasquez's counsel asked if he could approach the bench, and the trial court excused the jury. Vasquez objected that Mestas had repeatedly violated the motion in limine and requested a mistrial. The trial court denied Vasquez's motion for mistrial and again instructed Mestas that she should not mention any prior incidences that may have resulted in an arrest or any immigration issues of either party. The trial court instructed the jury to disregard Mestas's statement.

Vasquez argues the trial court erred by denying the motion for mistrial because Mestas's repeated references to incidents covered by the State's motion in limine constituted incurable evidence of extraneous offenses. When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for mistrial, the issue is whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004); *see also Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). We uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Coble*, 330 S.W.3d at 292. "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins*, 135 S.W.3d at 77; *see also Ocon v. State*, 284 S.W.3d 880, 884–85 (Tex. Crim. App. 2009) (mistrial is extreme remedy and should be granted "'only when residual prejudice remains' after less drastic alternatives are explored" (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. App.—Fort Worth, 2005), *aff'd*, 189 S.W.3d 272 (Tex. Crim. App. 2006)).

Whether a witness's improper reference to an extraneous offense warrants a mistrial depends on the particular facts of the case. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *see also Ocon*, 284 S.W.3d at 884. An instruction to disregard will ordinarily cure error associated with a witness's improper reference to an extraneous offense committed by the defendant. *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009) (per curiam); *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (per curiam). We presume the jury followed the trial court's instruction to disregard testimony in the absence of evidence that it did not. *Ladd*, 3 S.W.3d at 567 (quoting *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987)); *State v. Boyd*, 202 S.W.3d 393, 402 (Tex. App.—Dallas 2006, pet. ref'd). A mistrial is required only when the improper question or evidence is clearly prejudicial to the defendant and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds

of the jurors. *Young*, 283 S.W.3d at 878; *Ladd*, 3 S.W.3d at 567; *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992). In determining whether a prejudicial event was so harmful as to warrant a mistrial, we consider (1) the severity of the misconduct, (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004); *White v. State*, 395 S.W.3d 828, 838 (Tex. App.—Fort Worth 2013, no pet.).

Vasquez not only did not request a mistrial after Mestas testified that Vasquez was "detained," but affirmatively stated he would not seek a limiting instruction. Further, after Mestas testified that she had been threatened, Vasquez requested, and received, a limiting instruction from the trial court. Vasquez did not request a mistrial until after Mestas testified that Vasquez took drugs and had "priors." The trial court denied the request for a mistrial, but again instructed the jury not to consider the statement. Assuming that Mestas's statements that Vasquez was "detained" and had "priors" constituted evidence of extraneous offenses, we cannot conclude Mestas's testimony amounted to the sort of clearly inflammatory evidence or extreme circumstance that would warrant a mistrial. Mestas did not give any details about who detained Vasquez or why he was detained or what she meant by "priors." She mentioned drug use by Vasquez only once and, again, provided no details about the alleged conduct. Further, the trial court sustained Vasquez's objection to the testimony and, when requested to do so by Vasquez, directed the jurors to disregard Mestas's statements. There is nothing in the record to indicate the jury did not follow the trial court's instructions.

Finally, this case depended on the credibility of the witnesses. Mestas testified the assault occurred. There was evidence of injury to Mestas's forehead and of an indentation in the wall. However, both Vasquez and Olga testified there was no assault, and Mestas caused the indentation in the wall. The jury found the assault occurred, meaning it believed Mestas and did

not believe either Vasquez or Olga. Nothing in the record suggests the jury would have not have convicted Vasquez absent Mestas's references to extraneous offenses.

We conclude the trial court did not abuse its discretion by denying Vasquez's request for a mistrial. We resolve Vasquez's second point of error against him.

### Exclusion of Evidence

In his third point of error, Vasquez argues the trial court erred by excluding testimony about a pertinent character trait of Mestas. Vasquez called Naomi Chaves, who had worked with Vasquez at a car dealership since 2009, to testify about "some events" that occurred at his place of employment. The prosecutor objected and asked to approach the bench. Outside the presence of the jury, Chaves testified that, when Mestas could not contact Vasquez on his cellphone, she would call the dealership. At the time, Chaves was the receptionist and would answer the calls. According to Chaves, Mestas would call the dealership at least ten or fifteen times a day. Although Mestas was polite "at the beginning," she eventually became very rude, used "bad language" when Chaves told her that Vasquez was not available, and would hang up.

In August 2009, Mestas came to the dealership and asked to see Vasquez. Chaves told Mestas that Vasquez was in a meeting. Mestas insisted that she needed to speak to Vasquez immediately. According to Chaves, Mestas was angry and screaming. Vasquez came out of the meeting, and he and Mestas went into his office. Chaves got a phone call "from [Vasquez's] office stating to call the police." Chaves could hear Mestas screaming and told a manager she had been told to call the police. The manager said he would escort Mestas from the building. Chaves testified that Mestas came to the dealership at least three times and it was the "same situation" each time. According to Chaves, she also saw scratches on Vasquez.

–10–

Vasquez stated he was offering this testimony to show Mestas's demeanor, attitude, and emotional state. He asserted the testimony affected Mestas's credibility, showed motive, and went to "character." The trial court sustained the State's objection to Chaves's testimony.

On appeal, Vasquez contends Chaves's testimony was admissible under rule of evidence 404(a)(2) as a pertinent character trait of Mestas. Vasquez specifically argues the evidence showed Mestas's ability to intimidate, harass, manipulate, and physically abuse him. Vasquez contends the evidence showed that Mestas was capable of manipulating, and had in the past manipulated, situations in order to control him. Vasquez asserts the evidence would have shown the jury that he was not arrested on October 31, 2010 because the police officers could have believed Mestas injured herself and because his demeanor was incompatible with a person who had committed an assault.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id.*

In general, evidence of a person's character may not be used to prove that she behaved in a particular way at a given time. TEX. R. EVID. 404(a); *Tate v. State*, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998). Texas Rule of Evidence 404(a)(2) creates an exception to this rule, permitting an accused in a criminal case to introduce evidence of a pertinent character trait of the alleged victim of the offense on trial. TEX. R. EVID. 404(a)(2); *Martinez v. State*, 17 S.W.3d 677, 687 (Tex. Crim. App. 2000). "A pertinent character trait is 'one that relates to a trait involved in the offense charged or a defense raised.'" *Stitt v. State*, 102 S.W.3d 845, 849 (Tex. App.—Texarkana 2003, pet. ref'd) (quoting *Spector v. State*, 746 S.W.2d 946, 950 (Tex. App.—Austin 1988, pet. ref'd)). But under rule of evidence 405, such evidence generally must take the

–11–

form of reputation or opinion testimony. TEX. R. EVID. 405(a); *Martinez*, 17 S.W.3d at 687. Only if the alleged victim's character trait is an essential element of a charge, claim, or defense may the accused introduce specific instances of the victim's conduct under Rule 405(b). TEX. R. EVID. 405(b); *see Ex parte Miller*, 330 S.W.3d 610, 619–620 (Tex. Crim. App. 2009) (op. on reh'g). Character per se is almost never an essential element of a charge or defense in criminal cases. *Gilbert v. State*, 808 S.W.2d 467, 471 n.5 (Tex. Crim. App. 1991); *see also Tate*, 981 S.W.2d at 192 & n.5.

Vasquez sought to introduce specific instances of conduct by Mestas to prove the alleged pertinent character trait of Mestas being able to "intimidate, harass, manipulate, and physically abuse" him. However, Vasquez did not argue in either the trial court or in his brief on appeal that this character trait was an essential element of his defense that Mestas fabricated the allegations in the current case or that specific instances of conduct to prove the character trait were admissible under rule 405(b). Therefore, Vasquez failed to preserve this argument for our review. *See* TEX. R. APP. P. 33.1(a); 38.1(h).[4]

However, even if Vasquez preserved an argument that, pursuant to rules of evidence 404(a)(2) and 405(b), specific instances of conduct by Mestas were admissible to prove a pertinent character trait, the argument has no merit. Vasquez's defense was that Mestas injured herself and lied about it. Even if Mestas's conduct at the car dealership showed her ability to "intimidate, harass, manipulate, and physically abuse" Vasquez, the conduct did not involve Mestas injuring herself or fabricating allegations that Vasquez injured her. It, therefore, was not relevant evidence essential to prove Vasquez's defense, and the trial court did not abuse its discretion by excluding Chaves's testimony. *See Tate*, 981 S.W.2d at 192–93 & n.5 (victim's

---

[4] *See Clark v. State*, No. 03-11-00085-CR, 2014 WL 708910, at *6 (Tex. App.—Austin Feb. 19, 2014, no pet. h.) (mem. op., not designated for publication); *Soto v. State*, No. 04-09-00280-CR, 2010 WL 4273173, at *9 (Tex. App.—San Antonio Oct. 29, 2010, no pet. ) (mem. op., not designated for publication).

character not essential element of a claim of self-defense because proving who was aggressor did not depend exclusively upon character of victim).[5]  We resolve Vasquez's third point of error against him.

We affirm the trial court's judgment.

| | /Robert M. Fillmore/ |
| | ROBERT M. FILLMORE |
| | JUSTICE |

Do Not Publish
TEX. R. APP. P. 47

130347F.U05

---

[5] *See also Clark*, 2014 WL 708910, at *6 ("[P]roving that the complainant had fabricated her allegations is not dependent exclusively upon the character of the victim."); *Soto*, 2010 WL 4273173, at *10 (Trial court did not err by excluding evidence of specific instances of conduct because the defendant failed "to show how the victim's propensity to fight when challenged [was] a pertinent character trait which has any relevance in a sexual assault of a child case.").



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ABELARDO VASQUEZ, Appellant

No. 05-13-00347-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 10, Dallas County, Texas,
Trial Court Cause No. MA-1031684.
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 7th day of April, 2014.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE