**Opinion filed April 21, 2016**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00122-CR
_____

## MATTHEW ERIK LUVANO A/K/A
## MATTHEW ERIK FLORES, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 18951B**

## M E M O R A N D U M   O P I N I O N

The jury found Matthew Erik Luvano a/k/a Matthew Erik Flores guilty of two counts of indecency with a child. The jury returned a "true" verdict as to an enhancement charge contained in each count. The jury assessed punishment at confinement for life for the first count and confinement for twenty years and a $10,000 fine for the second count. The trial court sentenced Appellant accordingly

and ordered the sentences to be served concurrently. Appellant presents four issues on appeal. We affirm.

## I. *The Charged Offenses*

The grand jury indicted Appellant for indecency with a child by contact and indecency with a child by exposure. The indictment alleged that on or about March 1, 2012, Appellant intentionally and knowingly, with the intent to arouse or gratify his sexual desire, engaged in sexual contact with and exposed himself to A.L, a child younger than seventeen years of age. Each count further alleged that Appellant had been previously convicted of felony sexual assault. A person commits the offense of indecency with a child by contact if the person, with the intent to gratify the sexual desire of any person, engages in sexual contact with a child younger than seventeen years of age. TEX. PENAL CODE ANN. § 21.11(a)(1), (c) (West 2011). The offense is a felony of the second degree, but if the States proves that the defendant had a prior conviction for the offense of sexual assault, then the defendant must receive a punishment of confinement for life. *Id.* § 21.11(d), § 12.42(c)(2) (West Supp. 2015). A person commits the offense of indecency with a child by exposure if the person exposes any part of his genitals to a child younger than seventeen years of age, knowing the child is present, with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(a)(2)(A). The offense is a felony of the third degree, but if the States proves that the defendant had a prior conviction for the offense of sexual assault, then the defendant shall be punished for a felony of the second degree. *Id.* §§ 21.11(d), 12.42(a).

## II. *Evidence at Trial*

Appellant is the paternal uncle of A.L., the victim. A.L. was eight years old at the time of the offense. A.L. made an outcry to her counselor, Karla Stephens, while Stephens drove her home after a counseling session. A.L. told Stephens that

2

her "Uncle Matt" put his hands in A.L.'s panties, touched her "private," kissed her mouth, and touched her butt. Stephens reported the allegations to A.L.'s mother.

A.L.'s mother questioned A.L. about the allegations. A.L. told her mother that Appellant had exposed himself to her and that Appellant had said he liked A.L. "as a girlfriend." A.L.'s mother testified that A.L. told her some of the same things that Stephens had mentioned. A.L. testified about an instance when Appellant kissed her neck and touched her "private part." A.L. also indicated that the "private part" she referred to was her "pee pee." A.L.'s mother reported A.L.'s allegations to the Abilene Police Department.

Detective Stacey Cisneros of the Abilene Police Department investigated the allegations of sexual misconduct. Detective Cisneros went to Appellant's house to request an interview. Appellant told Detective Cisneros that he did not have a car and had to be at work later that day, but he agreed to the interview and rode to the Law Enforcement Center (LEC) with Detective Cisneros. Detective Cisneros read Appellant his *Miranda*[1] warnings and proceeded to interview him. The interview lasted for a little over two hours. Detective Cisneros testified that Appellant was not under arrest or in custody and that he was free to leave at any point. At the end of the interview, Detective Cisneros offered to take Appellant back home or to call Appellant's mother and ask her to come get Appellant.

### III. *Issues Presented*

In his first issue, Appellant argues that the trial court erred when it admitted into evidence his statements taken by law enforcement during the interview because he did not voluntarily give the statements. In his second issue, Appellant argues that the trial court erred when it admitted evidence of his extraneous bad acts committed against A.L. Appellant argues in his third issue that the trial court erred when it

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

excluded from evidence some of A.L.'s counseling records. In his final issue, Appellant argues that the trial court erred when it denied his motion for directed verdict as to the enhancement allegation. Appellant argues alternatively, as part of his final issue, that the use of the prior conviction against him constituted cruel and unusual punishment.

## IV. *Standards of Review*

We review Appellant's first, second, and third issues for an abuse of discretion. *See Garcia v. State*, 919 S.W.2d 370, 387 (Tex. Crim. App. 1996) (op. on reh'g) (first issue); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (second issue); *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006) (third issue). Under an abuse of discretion standard, we will reverse the trial court's decision only if it acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Montgomery v. State*, 810 S.W.2d 372, 390–92 (Tex. Crim. App. 1991). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* at 391. Appellant's fourth issue, a challenge to a trial court's ruling on a motion for directed verdict, is the same as a challenge to the sufficiency of the evidence. *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990). We will address Appellant's fourth issue first and then sequentially review his other three issues.

## V. *Analysis*

### A. Issue Four: Directed Verdict and Cruel and Unusual Punishment

Appellant argues that there was insufficient evidence to support the jury's finding of "true" to the enhancement allegation. Alternatively, Appellant argues that even if the evidence was sufficient, the use of the prior conviction for an enhanced punishment range amounted to cruel and unusual punishment under the Eighth Amendment.

### 1. *Sufficiency of the Evidence*

We review a challenge to the sufficiency of the evidence under the standard of review in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). When we review a trial court's denial of a motion for directed verdict, we must examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the enhancement allegations beyond a reasonable doubt. *See Young v. State*, 14 S.W.3d 748, 753 (Tex. Crim. App. 2000); *see also Jackson*, 443 U.S. at 319.

In order to prove that a defendant has prior convictions for enhancement purposes, the State must prove that (1) a prior conviction exists and (2) the defendant is linked to the prior conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). One of the most common ways to link the defendant to a prior judgment is through a fingerprint expert. *Beck v. State*, 719 S.W.2d 205, 209 (Tex. Crim. App. 1986). State's Exhibit No. 9 contained certified judgments for burglary of a building, burglary of a motor vehicle, and sexual assault committed by either Matthew Erik Luvano or Matthew Luvano.[2] At the end of State's Exhibit No. 9, there were fingerprints of "Matthew Erik Luvano." State's Exhibit No. 10 contained copies of fingerprints of "Matthew Erik Luvano" as well as a certified copy of a judgment revoking community supervision. Both exhibits also contained a picture of the convicted person, and the trial court admitted both without objection.

The State called Wallace McDaniel to testify about fingerprint identification. McDaniel had testified as an expert in fingerprint identification "[m]any times" before and had taken basic, intermediate, and advanced classes related to fingerprint analysis and identification. He examined the fingerprints from State's Exhibit Nos. 9

---

[2] Judgments for burglary of a building and burglary of a motor vehicle were entered against "Matthew Erik Luvano," while the judgment for sexual assault was entered against "Matthew Luvano."

and 10 and compared them to the fingerprints in State's Exhibit No. 11, which contained fingerprints taken from Appellant the day before the punishment phase of the trial began. McDaniel said that the fingerprints from all three exhibits came from the same person, and he identified that person as Appellant.

In addition to McDaniel's testimony that Appellant's fingerprints and the person's fingerprints as shown in the certified judgments were a match, State's Exhibit No. 9, which contained the certified judgments that pertained to the enhancement paragraphs, also contained photographs that the jury was able to compare to Appellant. Matching a photograph of the defendant in a penitentiary packet or certified judgment to the defendant at trial is sufficient evidence that the defendant at trial is the same person as that in the prior judgment of conviction. *Littles v. State*, 726 S.W.2d 26, 31–32 (Tex. Crim. App. 1987) (op. on reh'g).

We have reviewed the evidence in the light most favorable to the verdict, and we hold that the jury could have found beyond a reasonable doubt that Appellant had previously been convicted of the offense of sexual assault as alleged in the enhancement paragraph under each count in the indictment. Therefore, we overrule Appellant's assertion that the trial court erred when it denied his motion for directed verdict as to the enhancement allegation.

### 2. *Cruel and Unusual Punishment*

Appellant argues that, because the victim and the victim's mother from the prior sexual assault conviction testified in his favor, it was improper to use the prior conviction for enhancement purposes. He also argues that the prior conviction should not have been used because it occurred more than twenty years ago. Appellant, however, presents no authority in support of those arguments, and we have found none.

The Eighth Amendment to the United States Constitution prohibits sentences that are "grossly disproportionate" to the offense for which a defendant has been

convicted. *Bradfield v. State*, 42 S.W.3d 350, 353 (Tex. App.—Eastland 2001, pet. ref'd) (citing *Harmelin v. Michigan*, 501 U.S. 957 (1991)). When a sentence falls within the range provided by the legislature, it is generally not "grossly disproportionate" to the offense committed and should not be disturbed on appeal. *See, e.g.*, *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). The statutory range of confinement for indecency with a child by contact is punishment by imprisonment for two to twenty years. PENAL §§ 21.11(d), 12.33(a). However, when enhanced by a previous conviction of sexual assault, that offense becomes punishable by imprisonment for life. *Id.* § 12.42(c)(2). In each count, the jury found true as to the enhancement allegation of sexual assault, which resulted in a mandatory increase of the sentence in the first count to confinement for life and an increase in the maximum term of confinement for the second count from ten to twenty years. *Id.* § 12.42(a), (c)(2). Appellant's sentences fall within the statutory range set out by the legislature. For that reason, we decline to conclude that Appellant's punishment was cruel and unusual. Additionally, we have previously held that the automatic imposition of a life sentence under Section 12.42(c)(2) "does not constitute a disproportionate sentence nor one that constitutes cruel and unusual punishment under either the United States or Texas Constitutions." *Jennings v. State*, No. 11-10-00233-CR, 2011 WL 6307839, at *2 (Tex. App.—Eastland Dec. 15, 2011, pet. ref'd) (mem. op., not designated for publication). We overrule Appellant's fourth issue.

*B. Issue One: Voluntary Statement*

Appellant argues that the trial court erred when it admitted allegedly involuntary statements that he made to law enforcement personnel when he was at the LEC. Appellant contends that (1) his lack of independent transportation to and from the LEC, (2) the denial of his request for a break during the interview, and (3) Detective Cisneros's interview techniques, all rendered his statements

7

involuntary and inadmissible. Once a defendant raises the issue of voluntariness of a statement, the trial court must hold a hearing outside the presence of the jury on the admissibility of the statement. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West Supp. 2015); *Jackson v. Denno*, 378 U.S. 368, 380 (1964). The burden is on the State to prove, by a preponderance of the evidence, that the statement was voluntarily made. *State v. Terrazas*, 4 S.W.3d 720, 725 (Tex. Crim. App. 1999).

A statement is involuntary if there was official, coercive conduct of such a nature that any statement obtained was unlikely to have been the product of an essentially free and unconstrained choice by its maker. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). To determine if the statement was voluntary, the reviewing court must examine the totality of the circumstances surrounding the acquisition of the statement. *Colorado v. Connelly*, 479 U.S. 157, 176 (1986). Without coercive police conduct causally related to the statement, there is no basis for concluding any state actor has deprived a criminal defendant of due process of law. *Id.* at 164. The ultimate question to determine voluntariness is "whether the suspect's will was overborne" by the conduct of the state actor. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).

Detective Cisneros investigated Appellant as a suspect after A.L. made the outcry that Appellant had sexually abused her. Detective Cisneros arrived at Appellant's home and requested an interview. Appellant told Detective Cisneros that he did not have independent transportation and that he needed to be at work later that day, but he agreed to go to the LEC for an interview. Once at the LEC, Detective Cisneros read Appellant his *Miranda* warnings, which Appellant waived, and Appellant proceeded with the interview. At the end of the interview, Detective Cisneros offered to take Appellant back home, but Appellant instead chose to call his mother for a ride.

Detective Cisneros testified that Appellant was not in custody and was free to leave at any time. At the beginning of the interview, Detective Cisneros indicated to Appellant that he had some "pretty important" questions and that "there's a lot that's been alleged." Detective Cisneros told Appellant that it was "the most important time . . . in your life." Detective Cisneros said that, in light of the importance of the interview, he did not "want to rush through it." Therefore, Appellant knew the importance of the interview from the beginning, and he was free to leave at any time; however, he chose to stay and complete the interview.

Appellant also asserts that, "Detective Cisneros took [his] responses to statements which Cisneros had kept deliberately vague and compound and [Detective Cisneros] presented them to the jury as admissions of the specific acts alleged in the indictment." Detective Cisneros testified at trial and was subjected to both direct and cross-examination. Furthermore, the jury watched a redacted version of the interview. Accordingly, we will defer to the factfinder's conclusion regarding the weight, if any, to give to Detective Cisneros's trial testimony regarding his interview with Appellant. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. In light of the foregoing, we cannot conclude that the trial court abused its discretion when it found that Appellant's statements to law enforcement personnel were made voluntarily. *See Evans v. State*, No. 11-13-00296-CR, 2015 WL 1501663, at *6 (Tex. App.—Eastland Mar. 31, 2015, pet. ref'd) (mem. op., not designated for publication). We overrule Appellant's first issue.

*C. Issue Two: Admission of Extraneous Bad Acts*

Appellant argues that the trial court abused its discretion when it admitted evidence of an alleged prior bad act committed by Appellant against A.L. Appellant complains that A.L. should not have been allowed to testify about an incident in which Appellant had kissed her several years prior to the acts alleged in the

9

indictment. Appellant cites Rules 403 and 404 of the Texas Rules of Evidence in support of his argument.

Evidence of an individual's bad character is generally not admissible to show that he acted in conformity therewith. *See* TEX. R. EVID. 404; *Montgomery*, 810 S.W.2d at 386–88. But, when a defendant is charged with indecency with a minor under seventeen years of age, evidence of extraneous acts may be admissible under Article 38.37 of the Code of Criminal Procedure. CRIM. PROC. art. 38.37.

Article 38.37 provides in part that evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, such as the state of mind of the defendant and the child and the previous and subsequent relationship of the defendant and child. *Id.* art. 38.37, § 1(b). That evidence may, however, still be excluded under Texas Rule of Evidence 403 if its probative value is *substantially outweighed* by its prejudicial value. *Walker v. State*, 4 S.W.3d 98, 102–03 (Tex. App.—Waco 1999, pet. ref'd).

The Texas Court of Criminal Appeals has noted that "Rule 403 creates a presumption of admissibility of all relevant evidence and authorizes a trial judge to exclude such evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992)); *see also Massey v. State*, 933 S.W.2d 141, 154 (Tex. Crim. App. 1996) (because Rule 403 favors the admissibility of relevant evidence, there is a presumption that relevant evidence will be more probative than prejudicial).

Appellant argued both at trial and on appeal that evidence of the extraneous act was irrelevant because his theory at trial was that the alleged incident never occurred at all. Therefore, Appellant argues that evidence of the extraneous act had

no bearing on his state of mind, motive, or intent. However, evidence of the prior occurrence of sexual misconduct by Appellant with A.L. was highly probative evidence showing that he had previous inappropriate contact with A.L., which related directly to "the previous and subsequent relationship between the defendant and the child." CRIM. PROC. art. 38.37, § 1(b)(2). Such evidence is the type of evidence that Article 38.37 of the Code of Criminal Procedure deems relevant and admissible. *See id.* art. 38.37, § 1(b).

On the other hand, admission of the extraneous act was prejudicial, as nearly all evidence is. *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007) (noting that "[v]irtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would not offer it"). In this case, however, the trial court concluded that the "evidence [was] more probative than prejudicial." We cannot conclude that the trial court's conclusion fell outside the zone of reasonable disagreement. *See Montgomery*, 810 S.W.2d at 391; *see also Bradshaw v. State*, 466 S.W.3d 875, 884 (Tex. App.—Texarkana 2015, pet. ref'd) (holding that the trial court did not abuse its discretion by admitting testimony of extraneous offenses); *Walker*, 4 S.W.3d at 103 (holding that the probative value of extraneous offense evidence was not substantially outweighed by its prejudicial value). Accordingly, the trial court did not abuse its discretion when it admitted the evidence. We overrule Appellant's second issue.

### D. Issue Three: Exclusion of the Victim's Counseling Records

Appellant argues that the trial court abused its discretion when it excluded an exhibit containing more than eighty pages of A.L.'s counseling records, Defendant's Exhibit No. Four, which Appellant characterized as relevant and probative impeachment evidence. A trial court does not abuse its discretion if evidence supports its decision to either admit or exclude evidence. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). But if the decision of the trial court is "so

clearly wrong as to lie outside that zone within which reasonable persons might disagree," then there is an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim App. 2005). And appellate courts "may *uphold* a trial court's ruling on any legal theory or basis applicable to the case, but usually may not *reverse* a trial court's ruling on any theory or basis that might have been applicable to the case, but was not raised." *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

The progress notes spanned a two-year period prior to the outcry and related to counseling sessions with A.L. about her behavioral problems. Appellant initially offered these progress notes as part of Defendant's Exhibit No. 1, which contained more than 350 pages of progress notes, but the trial court refused to admit such a lengthy exhibit. The progress notes in Defendant's Exhibit No. Four included notes from the day that A.L. made the outcry to Stephens. Appellant asserts that the entirety of the more than eighty pages, particularly "the progress notes from the [counseling] session [A.L.] attended immediately before making her initial accusation against Appellant, wherein it was recorded that A.L. 'tries to manipulate the situation often and likes seeing how far she can push boundaries,'" was admissible as impeachment evidence. Trial counsel argued that the progress notes would have allowed him to impeach A.L.'s credibility to show her mental impairment or disability as well as her bias and motive to fabricate the sexual abuse allegations against Appellant.

"A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." TEX. R. EVID. 608(a). "But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked." *Id.* And, when evidence of a character trait of a witness is admissible, it must be in the form of reputation or opinion testimony. TEX. R. EVID. 405(a)(1); *Tate v. State*, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998).

12

At trial, Appellant called Greg Rake, the counselor at A.L.'s elementary school, who was acquainted with A.L. On direct examination, he testified in regard to A.L.'s reputation for truthfulness that, "if [A.L.] has done something that she knows there are going to be consequences for, that she will attempt to tell things that are not truthful in order to not receive those consequences or to get out of being in trouble for making a bad choice." He further testified that A.L.'s "reputation would be to not tell the truth" in some situations.

A few days after Rake testified, trial counsel attempted to offer more than eighty pages of progress notes. Before Rake testified, the trial court requested that trial counsel limit the exhibit to three or four *relevant* documents. But trial counsel did not explain how the more than eighty pages of progress notes evinced any evidence that A.L. suffered mental impairment or disability. In fact, the notes and testimony in his offer of proof indicated the opposite. Furthermore, trial counsel also did not explain how the evidence in the progress notes showed a bias or motive by A.L. to fabricate allegations against Appellant.

Trial counsel also attempted to use specific instances of information in the progress notes rather than offer opinion or reputation testimony for the purpose of impeachment. A party may not introduce evidence of specific past conduct of a witness to prove conformity of character. TEX. R. EVID. 404; *Robbins v. State*, 88 S.W.3d 256, 259 (Tex. Crim. App. 2002) (citing *Montgomery*, 810 S.W.2d at 386–88); *accord Mozon*, 991 S.W.2d at 846; *Tate*, 981 S.W.2d at 192; *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh'g). Under Rule 405(b), specific instances of conduct may be permissible to present character evidence in cases in which "a person's character or character trait is an essential element of a charge, claim, or defense." TEX. R. EVID. 405(b). But Appellant has not explained how A.L.'s character is an essential element of the State's charge or an essential

13

element of his defense. In addition, trial counsel never explained how the progress notes were proper opinion or reputation impeachment testimony.

Appellant claimed that the progress notes were relevant and probative. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. Evidence that is not relevant is inadmissible. TEX. R. EVID. 402. Rule 403 presumes relevant evidence is admissible unless there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Mozon*, 991 S.W.2d at 847 (quoting *Joiner*, 825 S.W.2d at 708); *see also Massey*, 933 S.W.2d at 154.

The trial court reviewed the more than eighty pages of progress notes, which included the notes related to the day of the outcry and the individual notes from that day. The trial court sustained the State's objection to the admission of the progress notes. The trial court ruled that the individual notes were "not sufficiently reliable to be presented to the jury, and . . . it's far more prejudicial than probative of anything with regard to witness impeachment." When trial counsel queried the trial court as to the admissibility of the September 21, 2012 progress note, the trial court explained that it had considered both options and stated, "I'm considering the fact that the psychiatrist who's been seeing this child for quite some time doesn't see *any connection* between the child's conditions and any likelihood that the child would manipulate" (emphasis added). The trial court determined that the records were unreliable and more prejudicial than probative. In essence, the trial court found that the records were *irrelevant* and *were improper impeachment evidence*. After a review of the record, we cannot say that the trial court abused its discretion when it excluded the progress notes. We overrule Appellant's third issue.

## VI. *Conclusion*

We have reviewed the record and conclude that the trial court did not err when it denied Appellant's motion for directed verdict, when it admitted evidence of Appellant's extraneous bad act committed against A.L., or when it concluded that Appellant's statements to law enforcement were made voluntarily. We also hold that Appellant's punishment was not cruel and unusual. Finally, we hold that the trial court did not abuse its discretion when it excluded, as unreliable and more prejudicial than probative, the progress notes from A.L.'s counseling sessions.

## VII. *This Court's Ruling*

We affirm the judgments of the trial court.


MIKE WILLSON

JUSTICE


April 21, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.