

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00796-CR

Gaylon **JOSEPH**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2024CR0660
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:     Adrian A. Spears II, Justice

Sitting:        Lori Massey Brissette, Justice
                Adrian A. Spears II, Justice
                Velia J. Meza, Justice

Delivered and Filed: May 27, 2026

AFFIRMED

After a jury trial, Gaylon Joseph, Jr. was found guilty of aggravated assault with a deadly weapon and was sentenced to ten years of imprisonment. On appeal, he brings three issues: (1) the evidence is legally insufficient to support his conviction; (2) the trial court erred in admitting exhibits that were not properly authenticated; and (3) the trial court erred in denying his motion for new trial on the basis of ineffective assistance of counsel. We affirm.

## BACKGROUND

Joseph was charged with two counts of aggravated assault with a deadly weapon and one count of assault of a family or household member by choking or strangulation. Count I alleged that on or about November 26, 2023, Joseph committed aggravated assault with a deadly weapon by pointing said deadly weapon at and in the direction of the complainant. Count II alleged that on or about November 26, 2023, Joseph committed aggravated assault with a deadly weapon by shooting at and in the direction of the complainant with said deadly weapon. Count III alleged that on or about November 26, 2023, Joseph committed assault family violence by impeding the normal breathing or circulation of the blood of the complainant by applying pressure to the complainant's throat or neck.

At trial, the complainant testified that on November 26, 2026, she and Joseph were in a relationship and were living together in a house. According to the complainant, after a night of drinking, she and Joseph came back to their home and fought, which resulted in Joseph choking her, shooting a gun in the house, and rubbing another gun on her body to threaten her. During his testimony, Joseph denied the allegations, testifying that the complainant was the aggressor. Police officers testified to the bullet hole found in an interior wall of the home and other evidence of items being broken and shattered at the home. While the jury found Joseph "not guilty" on Counts II and III, it found him "guilty" on Count I. Joseph appealed.

## SUFFICIENCY

Joseph argues the evidence is insufficient to show that he used or exhibited a deadly weapon during the commission of an assault.[1] In assessing the legal sufficiency of the evidence to

---

[1]Specifically, Joseph argues that the evidence is "factually and legally insufficient." With regard to Joseph's factual sufficiency challenge, the Texas Court of Criminal Appeals has clarified that the only standard a reviewing court applies in determining the sufficiency of evidence is the *Jackson v. Virginia* legal-sufficiency standard. *See Brooks v.*

support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "Although the State must prove that a defendant is guilty beyond a reasonable doubt, the State's burden does not require it to disprove every conceivable alternative to a defendant's guilt." *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). "In a sufficiency inquiry, direct evidence and circumstantial evidence are equally probative." *Id*.

"The jury is the sole judge of the weight and credibility of the evidence." *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). "When considering a claim of evidentiary insufficiency, we must keep in mind that a juror may choose to believe or disbelieve all, some, or none of the evidence presented." *Id*. "Further, while jurors may not base their decision on mere speculation or unsupported inferences, they may draw reasonable inferences from the evidence." *Id*. "The evidence is sufficient to support a conviction, and thus the jury's verdict is not irrational, if 'the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict.'" *Id*. at 655-56 (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). "When faced with conflicts in the evidence, a reviewing court shall presume that the fact finder resolved those conflicts in favor of the verdict and defer to that determination." *Id*. at 656.

"We measure the sufficiency of the evidence against the hypothetically-correct jury charge, defined by the statutory elements as modified by the charging instrument." *Id*. Here, Joseph was charged with aggravated assault with a deadly weapon pursuant to section 22.02(a)(2) of the Texas

---

*State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Thus, there is no factual sufficiency challenge in a criminal appeal. *See id*.

Penal Code. Section 22.02(a)(2) provides that a person commits aggravated assault "if the person commits assault as defined in § 22.01 and the person: . . . (2) uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE § 22.02(a)(2). Section 22.01(a) provides that a person commits assault if the person:

> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PENAL CODE § 22.01(a). The indictment in Count I alleged assault pursuant to section 22.01(a)(2), that is, by intentionally or knowingly threatening another with imminent bodily injury.

At trial, the complainant testified that after a night of drinking to celebrate Joseph's birthday, she and Joseph began arguing. They were dropped off in the early hours of November 26, 2023, at the home they were leasing together. Joseph went into the house first and locked out the complainant. The complainant then went around the house, jumped the fence, and used a rock to break a window in the master bedroom. She went inside the house through the broken window and then went to the kitchen. The complainant testified that Joseph grabbed her phone and became belligerent when he saw a text from the complainant's former boyfriend. According to the complainant, Joseph was aggressive and would not leave her alone. While she was seated at the kitchen table, Joseph picked up a water jug and poured water on her face. She then went to her son's bedroom, and Joseph followed her. Joseph started breaking things and repeatedly threw a large knife into her son's bearded dragon lizard tank. A video taken by the complainant on her cell phone was admitted in evidence at trial. It shows Joseph throwing a knife into the lizard tank. In the video, Joseph is slurring his words and appears to be intoxicated.

The complainant testified that she then moved to her daughter's room. Joseph followed and started to break more things in her daughter's room. The complainant then heard the sound of Joseph "racking" a gun, which she thought was most likely his AR-15 rifle. Joseph then came into her daughter's room with a pistol. While the complainant was lying on her daughter's bed with her eyes closed, Joseph rubbed the nozzle of the gun on the complainant's body and pressed the gun "hard against [her] cheek." She then heard him making a sound with the gun, and the gun fired. Later, the complainant saw a bullet hole in the bathroom wall.

According to the complainant, she got up to go into the bathroom and was grabbed by Joseph, who tried to choke her with a towel. The complainant testified that Joseph stopped choking her and walked away laughing.

The complainant then went to her daughter's room and eventually fell asleep. She testified that she believed Joseph had gone to the garage where he spent a lot of time. The next day, she called her former husband to request that he keep their children longer. She testified that she had wanted to clean up all the broken items before her children came home. She testified that Joseph interfered with her cleaning up. She was sweeping up broken glass and Joseph would then "break something else so [she] couldn't finish cleaning." She asked Joseph to leave, explaining that her children were coming home and that she "didn't want any of this when [her] kids get home." According to the complainant, Joseph responded by threatening her. He said, "[I]f you think that everything is going to be normal when your kids come home, . . . you have something else coming. I can't wait till they walk through that door so they can see what I'm going to do to you." The complainant testified that she did not call the police immediately because she was "afraid of the consequences of him not going to jail."

Four days later, Joseph told her that he was calling the police, and the complainant took a video, which was admitted in evidence, of him making that call. The complainant testified that because her children were supposed to come home that day, she left the house and parked down the street to see when the officers arrived. The officers, however, never appeared. She called the police to inquire about the status of the officers but was told that no call had been made to the police. The complainant then requested that officers meet her away from the house.

Officer Jayson Boyce of the San Antonio Police Department testified that he and Officer Jason Spraggins met the complainant at an apartment complex near the complainant's and Joseph's house. The complainant told them what had happened at the house. A short time later, the officers knocked on the door of the house, and Joseph answered. Officer Boyce informed Joseph that there had been a 9-1-1 hangup earlier that day, that a neighbor had complained about hearing a gunshot a few days prior, and that they needed to check on everybody in the house to make sure they were okay. Officer Boyce testified at trial that he lied to Joseph about the neighbor complaining about a gunshot to see how Joseph would react. According to Officer Spraggins, Joseph claimed at first to be alone in the house but eventually acknowledged that the complainant was also inside the house. Officer Spraggins called out to the complainant who was behind the door. Officer Spraggins testified that the complainant looked "very afraid" and was "constantly darting her eyes back and forth between [the officer] and [Joseph] through the door." Officer Spraggins asked the complainant if she was afraid and needed them at the house. She replied, "Yes," and motioned the officers to come inside the house.

The complainant walked Officer Spraggins through the house. He saw "a gigantic mess in the garage," including "a bunch of broken stuff, a TV," and "a bunch of property that was damaged and destroyed." He saw what appeared to be a bullet hole in the bathroom wall. Officer Spraggins

testified that Joseph became increasingly belligerent as the investigation continued. Upon seeing the bullet hole and evidence of an altercation, the officers obtained a search warrant. Their search resulted in finding an "AR platform, which looked like a . . . Smith & Wesson M & P 15" and "at least one handgun." Crime scene investigators took pictures of inside and outside the home. Joseph was placed in handcuffs and arrested.

During his testimony, Joseph testified that he and the complainant had gone to two or three different bars and then a strip club where the complainant was "kicked out" "five times." According to Joseph, after getting kicked out, the complainant kept going back into the strip club. When he and the complainant were dropped off at their home, Joseph "power walked to the house and closed the door and locked her out." He testified that he heard glass breaking and realized the complainant had "jumped the gate, a[n] eight-foot gate in high heels and a dress." He was standing in the corner of the kitchen when the complainant started throwing chess pieces at him. He testified that she then started throwing everything she could find on the counter and the dish rack at him. The complainant went to the bedroom, and Joseph could hear metal clicking. He walked toward the bedroom and met the complainant in the hallway. She was holding his Glock 21 nine-millimeter pistol. He took the pistol from her, "disarmed it, and put it in [his] left pocket." The complainant walked to her daughter's bedroom. Joseph said that he then took out from his other pocket a .45 caliber firearm that he always keeps on his body. According to Joseph, as he was taking the .45 caliber firearm out of his pocket, the complainant came out of her daughter's bedroom and "horse collar[ed him] by the back of [his] neck." He could see "her arms swinging, and she hi[t] him in the back of the head with a candle." Joseph testified, "That's when the gun went off."

Joseph testified that he then pushed the complainant, and she fell on the bed and started crying. He put the guns away, and the complainant fell asleep. According to Joseph, when she woke up, she started fighting with him again. He testified she threw all his bottles of cologne and broke them. According to Joseph, the complainant was the aggressor. He testified that when they were in her son's room, she threw a knife at Joseph. He picked up the knife and started "tossing" the knife to "intimidate[e]" her so that she would leave him alone. He admitted to dropping the knife in her son's bearded dragon tank as shown on the video the complainant took. He also admitted to purposefully tipping over her son's television.

As the sole judge of the weight and credibility of the evidence, the jury was free to believe the complainant's testimony and disbelieve Joseph's testimony.[2] *See Edward*, 635 S.W.3d at 655. Joseph admits that circumstantial evidence can support a conviction and that "a jury can convict solely on an alleged victim's testimony." Nevertheless, he argues that the evidence is insufficient because the jury acquitted him of two counts of aggravated assault and convicted him of only one count of aggravated assault. He thus argues that the jury must not have believed him or the complainant "to a legally sufficient degree." The jury, however, is free to believe or disbelieve all or part of a witness's testimony. *See Edward*, 635 S.W.3d at 655 (explaining that when considering sufficiency of the evidence, an appellate court must "keep in mind that a juror may choose to believe or disbelieve all, some, or none of the evidence presented"); *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998) ("The trier of fact is always free to selectively believe all or part of the testimony proffered and introduced by either side."). And, under our standard of review, we consider all the evidence in the light most favorable to the verdict. *See Martin*, 635 S.W.3d at 679.

---

[2]We note that in his brief, Joseph stresses that "the uncontroverted testimony of [defense counsel] during the motion for new trial was that the jury did not believe the defendant or the complainant to a legally sufficient degree." The testimony of defense counsel during the motion for new trial hearing, however, is irrelevant to the issue of whether there was sufficient evidence at trial to support Joseph's conviction.

The complainant testified that during a fight between her and Joseph, he rubbed his pistol on her body and pressed the pistol hard into her cheek. From this evidence, the jury could rationally conclude beyond a reasonable doubt that Joseph intentionally and knowingly threatened the complainant with serious bodily injury, using a deadly weapon. *See id*. We therefore hold the evidence is sufficient to support Joseph's conviction.

### STATE'S EXHIBITS 3-17

Joseph argues that the trial court erred in admitting State's Exhibits 3-17, which are photographs taken of the outside and the inside of the house on November 30, 2023. According to Joseph, the photographs were not properly authenticated pursuant to Texas Rule of Evidence 901. We review a trial court's ruling on the admissibility of the evidence under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). "If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling." *Id*.

Texas Rule of Evidence 901 states, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). Under Rule 901, evidence can be authenticated in a number of ways, including by the testimony of a witness with knowledge that the "item is what it is claimed to be." *See* TEX. R. EVID. 901(b)(1). "When a photograph is authenticated by a witness with knowledge, the admissibility of the photograph is conditioned on the witness's identification of the exhibit as a fair and accurate depiction of the event the photograph purports to portray." *Pena v. State*, 467 S.W.3d 71, 75 (Tex. App.—San Antonio 2015, no pet.). "There is no requirement the individual authenticating the photograph have been the photographer or even been present when the photograph was taken." *Id*.

Here, the complainant testified that she saw the crime scene investigators taking the photographs of her home four days after the incident. She testified that the photos in question were of her home and that they were a fair and accurate representation of what her home looked like four days after the incident. We therefore find no abuse of discretion in admitting the photos as State's Exhibits 3-17.[3] *See id*.

## MOTION FOR NEW TRIAL

Joseph argues the trial court erred in denying his motion for new trial, which alleged ineffective assistance of counsel. We measure a claim of ineffective assistance of counsel against the two-prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986) (applying *Strickland* test). A person claiming that counsel was ineffective must prove, by a preponderance of the evidence, that (1) counsel's performance was deficient, falling below an "objective standard of reasonableness," and (2) the deficient performance prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) (citation omitted). To show deficient performance, a defendant must show "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. We "indulge in a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that the challenged action might be considered sound trial strategy." *Ex parte Jimenez*, 364 S.W.3d at 883 (quotation omitted). "The mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel." *Id.* "The *Strickland* test is judged by the 'totality of the

---

[3]We note that crime scene investigator Carin Crain later testified at trial that she took the photos of the house during the investigation.

representation,' not by counsel's isolated acts or omissions, and the test is applied from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight." *Id.*

"When the trial court denies a motion for new trial alleging ineffective assistance of counsel, 'we view the relevant legal standards through the prism of abuse of discretion.'" *Lampkin v. State*, 470 S.W.3d 876, 903 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Ramirez v. State*, 301 S.W.3d 410, 415 (Tex. App.—Austin 2009, no pet.)). "The test for abuse of discretion is not whether, in the opinion of the appellate court, the facts present a suitable case for the trial court's action, but rather, whether the trial court acted without reference to any guiding rules or principles." *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). "The bare fact that a trial court may decide a matter differently from an appellate court does not demonstrate an abuse of discretion." *Id*. "Appellate courts view the evidence in the light most favorable to the trial court's ruling, defer to the court's credibility choices, and assume that all reasonable fact findings in support of the ruling have been made." *Id*.

Joseph complains that his trial counsel was ineffective because he failed to call certain witnesses and elicit testimony from those witnesses about his character and the character of the complainant. Specifically, at the motion for new trial hearing, Joseph elicited testimony from the complainant's ex-husband, the current wife of the complainant's ex-husband, the sister of the complainant's ex-husband, Joseph's sister, a family friend of Joseph, and a friend of Joseph. These witnesses testified that had they been called as witnesses by defense counsel at trial, they would have testified that the complainant's character traits for truthfulness, peacefulness, and law abidingness are bad. Some of these witnesses also state that they would testify about Joseph's good character traits.

First, we note that while there was testimony from Joseph's sister that she and Joseph had given his trial counsel a list of these witnesses' names, his trial counsel testified at the motion for new trial hearing that Joseph and his sister had not given him a list of character witnesses. Trial counsel testified that the only witness he had been aware of was the complainant's ex-husband. However, according to trial counsel, when he talked to the complainant's ex-husband, the ex-husband stated that "[h]e didn't want to be involved." Trial counsel explained that in his experience, "when witnesses don't want to be involved, they make bad witnesses." During the motion for new trial hearing, the complainant's ex-husband contradicted this testimony, stating that he had never been contacted by trial counsel. However, the trial court, as factfinder, could have believed trial counsel's testimony that he was never given a list of character witnesses and disbelieved the testimony of Joseph's sister that she had given him a list. Additionally, the trial court could have believed trial counsel's testimony that he had contacted the complainant's ex-husband and that the complainant's ex-husband stated he did not want to be a witness. The trial court could have also not found the testimony given by the complainant's ex-husband credible.

Further, we conclude that Joseph has not met his burden on appeal to show that he was prejudiced by his trial counsel's failure to call these witnesses at trial. *See Ex parte Jimenez*, 364 S.W.3d at 883. Every witness whom Joseph complains should have been called at trial as a character witness was either biased in his favor because they were either his relative, friend, or friend of the family, or they were prejudiced against the complainant as a result of an ongoing litigation between the complainant and her ex-husband over child custody matters.[4]

While Joseph argues that he was prejudiced because the underlying incident came down to "he said, she said," the evidence at trial comprised more than the testimony of the complainant.

---

[4]The current wife of the complainant's ex-husband testified that her husband and the complainant had been involved in litigation over the custody of their child for years.

Physical evidence, including the bullet hole in the wall and video footage of Joseph's conduct on the night in question, were also admitted. Thus, we hold that Joseph has failed to show that he was prejudiced by the trial court's failure to call the character witnesses in question.

Joseph also argues that trial counsel was ineffective for failing to obtain surveillance video from a gas station. According to Joseph, on the night in question, before they were dropped off at their home, they were at a gas station where the complainant hit him in the parking lot. However, whether the complainant hit him in a gas station parking lot prior to the incident in question would not excuse his assaultive conduct later. It seems what Joseph is arguing is that it would be relevant to the complainant's bad character. Texas Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts, even if relevant, is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but may "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(1)-(2). Thus, Rule 404(b) excludes "evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). In addition, Rule 405(b) permits evidence of specific acts as character evidence only when the "person's character or character trait is an essential element of a charge, claim, or defense." TEX. R. EVID. 405(b). Recently, in *Reyna v. State*, the appellant argued that pursuant to Texas Rule of Evidence 405(b), he should have been allowed to use "prior instances of conduct because . . . [the complainant's] character was at issue in the determination of credibility and the [j]ury's determination if [appellant] has the right to use self-defense." No. 13-24-00207-CR, 2026 WL 842977, at *8 (Tex. App.—Corpus Christi–Edinburg Mar. 26, 2026, no pet. h.) (alteration in original) (designated for publication). The court explained

that "[p]roving who was the aggressor in a claim for self-defense is not dependent exclusively upon the character of the victim," and that "a victim's character is not an essential element of a claim of self-defense." *Id*. (quoting *Tate v. State*, 981 S.W.2d 189, 192 n.5, 193 (Tex. Crim. App. 1998)). Thus, the court rejected the appellant's argument that he should have been allowed to introduce specific instances of conduct to show that the complainant was the aggressor. *Id*. at \*5-8. Further, Joseph was able to testify at trial that the complainant was aggressive prior to the incident. Thus, we conclude Joseph has failed to show any prejudice from his trial counsel's failure to obtain the surveillance video in question.

Joseph also complains about his trial counsel's handling of a motion to recuse the prosecution. On May 25, 2024, trial counsel filed a motion to recuse the prosecution, arguing that the Bexar County District Attorney's Office had to recuse from prosecuting him because the complainant worked there as an office assistant. On July 23, 2024, the trial court denied the motion without a hearing. On appeal, Joseph argues his trial counsel was ineffective for failing to set the motion for a hearing so that he could elicit testimony. At the motion for new trial hearing, trial counsel was not asked any questions regarding his decision not to set the motion for a hearing before it was denied by the trial court. Thus, the record does not reflect the reasons for the trial court's decision. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (explaining that "[a]n ineffective-assistance claim must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim") (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

Moreover, in his brief, Joseph assumes that the motion to recuse was meritorious. However, the "standard of review for disqualification of the prosecutor by the trial court is whether the court abused its discretion." *Buntion v. State*, 482 S.W.3d 58, 76 (Tex. Crim. App. 2016). "A trial court

has limited authority to disqualify an elected district attorney and [his] staff from the prosecution of a criminal case." *Id*. "The office of a district attorney is constitutionally created and protected; thus, the district attorney's authority cannot be abridged or taken away." *Id*. (citations omitted); *see also* TEX. CONST. art. V, § 21. Article 2.01 of the Texas Code of Criminal Procedure "recognizes that a district attorney 'shall represent the State in all criminal cases' except when a district attorney's employment prior to election would be adverse to the prosecution of a particular case." *Buntion*, 482 S.W.3d at 76 (quoting TEX. CODE CRIM. PROC. art. 2.01). The court of criminal appeals "has further limited the reading of Article 2.01 to permit the trial court to disqualify the district attorney only when the conflict of interest rises to the level of a due process violation." *Id*. (citing *Landers v. State*, 256 S.W.3d 295, 304 (Tex. Crim. App. 2008)). Thus, in *Landers*, the court of criminal appeals "held that the district attorney's prosecution of the defendant, whom he had previously represented on a different charge of intoxication assault, did not violate the defendant's right to due process, and thus the district attorney could not be disqualified." *Buntion*, 482 S.W.3d at 76 (discussing *Landers*). The *Landers* Court reasoned that because "the representation of the defendant was not on the same case that the district attorney was now prosecuting, and there was no evidence that the State's attorney used any confidential information in the defendant's prosecution on the current charge, there had been no due process violation, and thus the district attorney could not be disqualified." *Buntion*, 482 S.W.3d at 76. Here, the fact that the complainant is an office assistant in a large district attorney's office like the Bexar County District Attorney's Office is not, in and of itself, sufficient to show that the Bexar County District Attorney's Office was disqualified. Thus, Joseph has failed to show that his motion to recuse would have been granted if his trial counsel had obtained a hearing.

We hold Joseph has failed in his burden to show he was denied ineffective assistance of counsel. Thus, the trial court did not err in denying his motion for new trial.

## CONCLUSION

We affirm the judgment of the trial court.

Adrian A. Spears II, Justice

DO NOT PUBLISH